Earl L. CALDWELL, Jr., Appellant,

v.

E. G. KINGSBERY et al., Appellees.

No. 11735.

Court of Civil Appeals of Texas, Austin.

Feb. 18, 1970.

Rehearing Denied March 11, 1970.

Carr, Osorio, Palmer, Dickson, Long & Coleman, William Dickson, Austin, for appellant.

David L. Tisinger, Austin, for appellees.

PHILLIPS, Chief Justice.

The appellees, E. G. Kingsbery, Glenn M. Tooke, Jr. and T & K Corporation, brought suit in the court below, as a stockholders' bill for the benefit of the appellee, C. T. K. Corporation, which is alleged to have been in jeopardy by reason of the misconduct of the appellant, Earl L. Caldwell, Jr. The appellees sought a temporary restraining order, temporary injunction, and a permanent injunction, damages and declaratory judgment against the appellant, Earl L. Caldwell, Jr., a director, president and general manager of the C. T. K. Corporation.

The appellees claim that the appellant Caldwell has been ousted as president, general manager and as a director, by majority vote at a special stockholders' and directors' meeting held a few days prior to the filing of their petition on August 8, 1969; such ouster and removal was alleged to have been in good faith because of the manifested inability of the appellant Caldwell to properly perform his corporate duties; that the appellant Caldwell:

"refuses to recognize his removal, and avows that he will continue in office and in charge of the Company; contrary to express order of the Board of Directors he continues to write checks, and has diverted by unauthorized and prohibited check writings $9,500.00 from the Company Bank Account * * * and has misapplied such sums beyond the reach of the Company officers and beyond the reach of the Company."

The appellees further alleged in their petition that:

"unless restrained and enjoined, defendant will before notice can be issued and hearing had cause immediate and irreparable injury, loss and damage to

Plaintiffs by continuing to write checks and use Company money for other than corporate purposes, and continuing to hold himself out as Company President and General Manager, and continuing to hold the Company books, journals, checkbooks, deposit slips, and financial records in his custody to the exclusion of Plaintiffs;"

The appellees further alleged that they have no adequate remedy at law and that they have already been damaged in untold amounts and that in view of appellant Caldwell's persistence in claiming his offices in the company in spite of his removal, the court should enter judgment declaring him removed and enjoining him from claiming any office.

The court issued a temporary restraining order without notice and subsequently entered a temporary injunction, after a hearing, prohibiting appellant from managing the affairs of the Corporation.

The appellant Caldwell filed a Petition as cross-plaintiff in behalf of himself and the C. T. K. Corporation. He also asked for a temporary injunction to preserve the status quo. The court denied this relief.

The temporary injunction restrained appellant from writing any C. T. K. Corporation checks and from using any money obtained from the Company except as salary, from acting as an officer of the corporation, and from refusing to give appellees access to the company books and records. The court further directed that another director's and stockholder's meeting should be held on September 2, 1969. Appellant's request for an injunction and for a receivership were denied. Consequently, appellant perfected his appeal to this Court.

We affirm the judgment of the trial court.

We will consider appellant's first six points of error together. They are the error of the court in enjoining appellant from functioning as president, director and general manager of the C. T. K. Corporation because the injunction determines the rights of the appellant without a proper trial on the merits, because the injunction is based on mere surmise, destroyed the status quo, grants appellees all relief for which they prayed and was in conflict with Texas statutory law and the bylaws of C. T. K. Corporation.

We overrule these points.

The C. T. K. Corporation was formed to operate a Mexican restaurant business. Appellant was procured by Tooke and Kingsbery on a trial basis to manage the restaurant when a building they had under construction was completed. Pending construction of the building he was authorized to tend to routine matters.

When the corporation was formed, appellant was appointed president and the bylaws gave him authority of general supervision over the corporation's affairs. However, the corporation's business was carried on very informally, and at least two directors consulted usually as to any matter of importance. The bylaws also provided that an officer could be removed at any time by a two-thirds vote of the Board of Directors.

Three of the appellees, Kingsbery, Tooke and T & K Corporation, own two-thirds of the stock of C. T. K. Corporation. Kingsbery and Tooke each own fifty percent of the stock in T & K Corporation, except that a Mrs. Laura Bomar (not a party) owns 100 shares out of ten thousand, or one per cent of the stock of T & K. Mrs. Bomar has, from the beginning, left the management of T & K entirely up to Mr. Kingsbery. Therefore, for all practical purposes, Mr. Kingsbery and Mr. Tooke control T & K Corporation, and thus control two-thirds of the stock of C. T. K. Corporation.

T & K Corporation was formed in 1964. It has been very successful in the Mexican restaurant business, and has no other business.

In 1968 Kingsbery and Tooke considered opening another Mexican restaurant, and sought to find a manager on a trial basis. Tooke had known appellant Caldwell in past years and thought he might teach Caldwell the Mexican restaurant business. Kingsbery and Tooke discussed this proposition with Caldwell and the three agreed that a new corporation would be formed and Caldwell on a trial basis would be trained to manage it. C. T. K. Corporation was thus formed for the purpose of implementing the proposal, and Caldwell, Kingsbery and Tooke were to each have one-third of the stock, except that most of Kingsbery and Tooke's stock was placed in the name of T & K Corporation. The stock issue was 5000 shares to Caldwell, 9800 shares to T & K Corporation, 100 shares to Kingsbery, and 100 shares to Tooke. Caldwell was appointed President, Kingsbery Vice President, and Tooke was appointed Secretary-Treasurer.

Land was purchased, building plans developed, City rezoning arranged, financing on an interim basis at the Capital National Bank was procured with Kingsbery's guaranty, and the building started. In the meantime, Tooke started trying to teach Caldwell the Mexican restaurant business. In a short time Tooke learned that Caldwell was not qualified to learn such business, and could not get along with Mexican people. Tooke testified that getting along with Mexican people was one of the main secrets to success.

Caldwell had been in the Navy twenty years, with practically no business experience. For a short time before coming with Kingsbery and Tooke he had been a claims adjuster.

Appellees contend that Caldwell showed very poor business judgment. He did not know he was supposed to hold out social security and withholding taxes; he put the company automobile in his own name because he did not think that the company could get insurance. He did not keep up with what was in the company bank account, and he did not keep up with the money that the company owed the bank. He refused to show the books to the other officers at times, stating that he would have to consult counsel. He was inefficient.

That with arbitrary conduct, Caldwell made unreasonable demands on workmen at the construction job, constantly took their pictures for reasons peculiar to him, alienated the workmen, caused some of them to leave the job, and generally slowed the job, causing the company and the job to suffer increased costs of at least $5,000.00.

On July 21, 1969, Tooke confronted Caldwell with the situation and told Caldwell their relationship would not work; he told Caldwell that Kingsbery was out of town and that upon Kinsbery's return there would have to be a meeting to discuss the proposition that Caldwell should no longer serve as President, Director or Manager of Company affairs. He told Caldwell that in Tooke's opinion Caldwell would have "to go." Caldwell replied that he would not leave or change his position. Caldwell and Tooke called a meeting to be held upon Kingsbery's return. This was for the meeting held August 5, 1969.

Upon Kingsbery's return to town on or about August 2nd or 3rd, both Kingsbery and Tooke tried to get Caldwell to call or set the meeting. They were unsuccessful. Mr. Kingsbery therefore instructed John Reed (assistant secretary on the company books) to arrange a meeting with Caldwell. Reed called the meeting for August 5, 1969 at 2:00 o'clock p. m. The three Directors and Stockholders, Kingsbery, Caldwell and Tooke all met at that time in the company office. Caldwell made no objection that the meeting was not lawfully called or convened. This is undisputed.

Meetings of the company had been customarily held on an informal basis, without written notices or waivers. Except for the original organizational meetings, all busi-

ness was done without resort to any technical rules.

The minutes of August 5, 1969, were testified to as being correct by Kingsbery and Tooke.

The minutes of the meeting held in August reflect largely the facts set out above.

The record further reflects that on the eve of the August 5 meeting, appellant engaged the attorneys bringing this appeal to represent him in view of the action he anticipated on the part of the majority stockholders.

▇▇▇▇ The issuance of a temporary injunction to preserve the status quo is largely discretionary with the trial judge. Texas Foundaries v. International Moulders and Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (Tex.1952). The status quo in this case was the peaceable, lawful continuation of the company's business as directed by its board of directors. Dickard v. Crawley, 230 S.W.2d 833 (Tex. Civ.App., Austin 1950, no writ); Rattikin Title Co. v. Grievance Committee of the State Bar of Texas, 272 S.W.2d 948 (Tex. Civ.App., Fort Worth, 1954, no writ). The pleadings and the evidence before the trial court present a case of probable right and probable injury thus clothing the trial court with a broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (Tex.1953).

▇▇▇ In contending that the meeting of August 5 was illegal, appellant questions notice required by the bylaws of the corporation. In this regard, Tooke and Kingsbery both testified that the situation presented was one of grave emergency in view of the fact that the corporation was in financial jeopardy; that in such situation of emergency the bylaws referred to provide for notice by "any means."

In any event, appellant, having attended the meeting and having participated there-

in, waived any defect in the notice. Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517 (1961).

The evidence is clear that Kingsbery and Tooke were practically the sole owners of the T & K Corporation which owned 9800 shares of the C. T. K. Corporation, thus there was a quorum present. Kingsbery and Tooke as directors of T & K authorized themselves to vote the stock of the C. T. K. Corporation. Appellant owns 5000 shares of C. T. K. Corporation stock. Article 2.29, Section E, of the Business Corporation Act, V.A.T.S., states that where shares of one corporation are in the name of another corporation such shares may be voted by proxy or as the board of directors of the corporation owning the stock may determine. Where directors are the stockholders, they are the corporation itself.

Article 2.43 of the Business Corporation Act provides that any officer may be removed by the board of directors whenever in its judgment the best interests of the corporation will be served thereby.

▇▇▇ Appellant's seventh point of error is that of the court in refusing to consider and rule on appellant's special exceptions timely filed and called to the court's attention prior to the rendition of the temporary injunction order of the court.

We overrule this point.

On the last two pages of a statement of facts consisting of 678 pages the following interchange took place:

"MR. DICKSON: I would like to have this on the record, Your Honor.

THE COURT: Of course they were duly filed on the 25th, I believe.

MR. DICKSON: Yes, sir.

THE COURT: However, when I called the case for whatever matters were to be heard yesterday morning, all parties announced ready, without at that

**252**

time urging the exceptions and they were brought up at about eleven o'clock yesterday morning. Is that correct?

MR. DICKSON: That is correct, Your Honor.

THE COURT: Now, at this time, of course I don't know what the—I don't know about ruling on the exceptions.

MR. DICKSON: Well, I think, Your Honor, that the Court is by law obligated to rule on the exceptions prior to the rendition—

THE COURT: Of the final judgment, if they are urged. Of course, they are being waived for this hearing.

MR. DICKSON: That is what I was going to say. Provided they are urged of the Court, and we do again call the Court's attention to the exceptions and ask that the Court rule on them prior to entering any decision in this matter, and at any time that the Court will rule on them, we would appreciate it.

THE COURT: All right."

The trial court, under the facts before it, correctly held that the special exceptions had been waived for the purposes of the temporary injunction hearing. While Tex. R.Civ.P. 90 states that matters in the nature of special exceptions in non-jury cases must be presented to the court before rendition of judgment, this rule does not prevent them from being waived earlier. 36 Texas L.Rev. 459. In any event, under the record before us, if this was error, it was harmless error under Tex.R.Civ.P. 434.

■ Appellant's point of error number eight is the error of the court in failing to grant supersedeas.

We overrule this point.

The court need not grant supersedeas from an order issuing a temporary injunction. Such a matter is discretionary. Rule 385(d) T.R.C.P. Owens v. Coker, 368 S.W. 2d 959 (Tex.Civ.App., Beaumont, 1963, no

writ); Oak Downs v. Watkins, 85 S.W. 2d 1100 (Tex.Civ.App., Dallas, 1935, no writ).

Appellant's ninth point of error is that of the court in refusing to grant the temporary injunction requested by C. T. K. Corporation through appellant, because the said corporation had a right to representation by its duly elected and qualified president and director.

We overrule this point and refer to our opinion with respect to the first six points herein.

The judgment of the trial court is affirmed.