**JOY CORPORATION et al., Appellants,**

v.

**NOB HILL NORTH PROPERTIES, LTD., et al., Appellees.**

**No. 969.**

Court of Civil Appeals of Texas, Tyler.

Nov. 4, 1976.

Rehearing Denied Dec. 2, 1976.

Lee Shipp, Dallas, for appellants.

Duncan E. Boeckman, H. David Herndon, Dallas, for appellees.

DUNAGAN, Justice.

Appellees, hereinafter referred to as "Nob Hill," sued appellants, Joy Corpora- tion, hereinafter sometimes referred to as "Joy" and Jack A. Weaver, substitute trus- tee, hereinafter sometimes referred to as "trustees," for permanent injunction and declaratory relief. A nonjury trial resulted in a judgment for appellees permanently enjoining appellants from foreclosing on ap- pellees' property on the basis of a certain alleged default and declaring that appellees were not in default under certain promisso- ry notes. The appellants have appealed from this judgment.

No findings of fact or conclusions of law were requested or filed.

Nob Hill is two limited California part- nerships known as Nob Hill North Proper- ties, LTD. and Nob Hill South Properties, LTD. Nob Hill North Properties, LTD. on March 15, 1973, executed a real estate mort- gage note to Joy in the amount of Seven Hundred Thirty-Two Thousand Nine Hun- dred Thirty-Five and No/100 ($732,935.00) Dollars, providing for monthly payments in the amount of Four Thousand Eight Hundred Seventeen and No/100 ($4,817.00) Dollars, beginning April 1, 1973; and Nob Hill South Properties, LTD. on the same date, executed a real estate mortgage note to Joy in the principal amount of One Million Four Hundred Two Thousand Sixty- Five and No/100 ($1,402,065.00) Dollars, providing for monthly payments in the amount of Nine Thousand Two Hundred Fourteen and No/100 ($9,214.00) Dollars, beginning April 1, 1973. Both Nob Hill limited partnerships agreed, in the Deeds of Trust, to pay monthly one-twelfth ($\frac{1}{12}$) of the estimated amount due for ad valorem taxes, amounting to Three Thousand Five Hundred Eleven and 65/100 ($3,511.65) Dol- lars, for a total payment on both notes in the amount of Seventeen Thousand Five Hundred Forty-Two and 65/100 ($17,542.65) Dollars.

The notes of Nob Hill to Joy were se- cured by Deeds of Trust. Nob Hill paid Joy the purchase price partly in cash, including prepaid interest, and the balance of the purchase price was evidenced by wrap- around notes and deeds of trust that were inferior to the first mortgage on said apart-

ments. The notes provided for acceleration in the event of default in the timely making of the monthly payments or in the event of default of the terms, covenants and provisions of the deeds of trust. There was no personal liability on the part of Nob Hill as maker of the notes.

Joy, under the Deeds of Trust, had the express right to take over and operate the apartments ten (10) days after Nob Hill's receipt of notice of default.

Joy claims that the payments due on August and September 1, 1973, were not made by Nob Hill to Joy; and, because of the alleged defaults, the trustee posted notices of foreclosure sale of Nob Hill's property on October 2, 1973.

Nob Hill, on October 1, 1973, was granted a temporary restraining order restraining the trustee's sale on October 2, 1973, and later granted a temporary injunction.

Trial on the petition for permanent injunction began on the 18th day of September 1975, was recessed, and concluded on the 23rd day of September 1975, at which time the trial court took the matter under advisement. Subsequently on December 9, 1975, the trial court entered judgment granting permanent injunction and declaring that Nob Hill was not in default as of September, 1975, and perpetually enjoining Joy and the Trustees from foreclosing the Deeds of Trust by extra-judicial foreclosure, by reason of any alleged default of Nob Hill under the notice or the Deeds of Trust securing said notes, occurring prior to the entry of the temporary injunction on October 18, 1973.

■ Appellants (defendants below) first attack the actions of the trial court in refusing to consider and rule on their special exceptions to appellees-plaintiffs' original petition. The special exceptions were filed on October 11, 1973, but no action concerning such exceptions was requested by appellants until 10 or 15 minutes prior to the trial of the case on September 18, 1975, almost two years later. The trial court deemed the exceptions waived due to the inaction on them by appellants. The excep-

tions complain that the appellees-plaintiffs had not alleged sufficient ground for injunctive relief. Appellants rely on Rule 90, T.R.C.P., which states that if exceptions are not brought to the attention of the trial judge before rendition of judgment, then the same shall be deemed to have been waived. Appellees reply that Rule 90 does not mean that the exceptions cannot be deemed waived by the trial judge at some earlier stage of the proceedings. We agree with appellees' contention.

While Rule 90, Texas Rules of Civil Procedure, does provide that in nonjury cases special exceptions must be brought to the attention of the judge of the trial court before rendition of judgment or they shall be deemed waived does not prevent said exceptions from being waived earlier. *Caldwell v. Kingsbery*, 451 S.W.2d 247, 252 (Tex.Civ.App.—Austin 1970, writ ref'd n. r. e.). However, we have examined the special exceptions and have concluded if the court's failure to pass upon these exceptions was error, it would be harmless under Rule 434, Texas Rules of Civil Procedure. *Swinford v. Allied Finance Co. of Casa View*, 424 S.W.2d 298, 301 (Tex.Civ.App.—Dallas 1968, writ dism'd); *Caldwell v. Kingsbery*, supra.

Joy in its points of error 2, 3, 4, 5, 6, 7, 8, 9 and 12 contends that there was "no evidence" and "insufficient evidence" to support the judgment of the trial court, and that such judgment is contrary to the great weight and preponderance of the evidence.

Appellees in their counterpoint contend that the court's judgment is amply supported by the evidence.

On March 15, 1973, appellant, Joy, conveyed to appellees the real property apartment complex which is the subject matter of this lawsuit. At closing, appellant, Joy, received from appellees cash and notes totalling $278,492.32, being a $100,000.00 down payment, $162,024.00 prepaid interest for one (1) year, plus additional prepaid interest for April 1, 1974, and five days, amounting to $16,368.30. Two Hundred Nineteen Thousand Ninety-Two and 20/100 ($219,092.20) Dollars of the foregoing consideration at closing was in the form of a

note which was fully paid before its due date of April 26, 1973.

In addition to the aforementioned consideration paid at closing, appellees executed two promissory notes totalling $2,135,000.00, one of which was in the principal amount of $1,402,065.00 and the other in the principal amount of $732,935.00. Each note bore interest at the rate of 7.6% per annum, and the larger note called for a monthly payment of $9,214.00, and the smaller for a monthly payment of $4,817.00, both beginning on or before the 1st day of April, 1973.

On May 7, June 5, and July 5 of 1973, appellant, Joy, received monthly note payments of $17,542.65 each, of which approximately $552.00 per month went to principal, $3,511.65 per month for tax escrow, and the balance to interest. As of August 1, 1973, appellant, Joy, had received as prepaid interest and down payment a total of $320,586.30.

On August 20, 1973, the then general partner of the appellee limited partnerships received two letters advising that each of the notes were in default in that the August 1, 1973, payments on each note had not been received. Eight days later, on August 28, 1973, appellants took possession of the appellees' property and remained in possession of such property until the entry of the temporary injunction order in this case on October 12, 1973. During the time that appellants were so in possession of appellees' property, appellants collected rental income from appellees' property in the amount of $47,883.00.

Between August 31, 1973, and September 10, 1973, appellees were able, and on numerous occasions offered, to cure any default that may have then existed, and requested that appellants advise them of the amount necessary to cure any such default. In spite of these requests, appellants refused to advise appellees of an amount necessary to cure any default.

On September 18, 1973, appellees tendered to appellants two cashiers' checks totalling $37,322.50 in order to cure any default that may have then existed.

Appellants posted appellees' property for foreclosure sale to be held on October 2, 1973, but such sale was stopped by the trial court's temporary restraining order issued on October 1, 1973. At a subsequent hearing a permanent injunction was granted to appellees from which this appeal resulted.

The trial court, as trier of the facts, is judge of the credibility of the witnesses and of the weight to be given their testimony. The trial court, as trier of the facts, had a right, and apparently exercised it, to reject the testimony of appellant's witnesses and give credence to that given by the witnesses for appellee. *Hayes v. Easter*, 437 S.W.2d 652, 654 (Tex.Civ.App.—Texarkana 1968, n. w. h.) and *Black v. Shell Oil Company*, 397 S.W.2d 877, 882 (Tex.Civ. App.—Texarkana 1965, writ ref'd n. r. e.).

Each of the deeds conveying the property here in question from Joy to the appellee limited partnerships contained the following provision: "The Promissory Note provides for:

"(A) Acceleration of maturity in the event of continuation of default: (i) in payment of any monthly installment on the Promissory Note, or (ii) under the covenants contained in the Deed of Trust securing the Promissory Note, *in each instance beyond a period of ten (10) days after* (i) the occurrence of any event of default, and (ii) *written notice of such default by the holder of the Promissory Note to Grantee.*" (Emphasis ours.)

It is unquestioned that Joy's right to accelerate the maturity of the debt evidenced by the notes was optional. The right to accelerate being optional, it was incumbent upon Joy to do three (3) things in order to accelerate:

(1) Make formal demand upon appellees for the payment of the past due installment;

(2) Give an opportunity to make such payment; and

(3) Declare that the entire debt is due, or take some unequivocal action, such as filing suit, which indicates that the entire debt is due. *Jernigan v. O'Brien*, 303 S.W.2d 515 (Tex.Civ.App.—Austin 1957,

n. w. h.); *National Debenture Corporation v. Smith*, 132 S.W.2d 429 (Tex.Civ. App.—Galveston 1939, dism'd judg. cor.).

On August 15, 1973, Joy wrote two (2) letters to the then general partner of the appellee limited partnerships which stated that the two (2) promissory notes were in default and the August 1, 1973 payment had not been received. The letter further stated that foreclosure proceedings would be instituted immediately as provided for in the Deed of Trust dated March 15, 1973, that appellants exercise their rights on assignment of rents and that no further notice shall be given. In these letters there was no declaration that the entire debt was due nor did these letters constitute unequivocal action indicating that the entire debt was due. *Hiller v. Prosper Tex, Inc.*, 437 S.W.2d 412 (Tex.Civ.App.—Houston 1969, n. w. h.). Such letters were merely the first step of the three required by the *Jernigan* and *National Debenture* cases for acceleration.

Being part of the purchase price of the property conveyed by said deeds, the notes and deeds are integral parts of the same transaction and should be read together. In view of this, acceleration can only occur ten (10) days after written notice of default. Therefore, Joy's letter of August 15, 1973, could not have been an acceleration. Acceleration could only have occurred sometime after August 25, 1973.

"Where the acceleration clause can be exercised only at the mortgagee's option, the courts have required that the mortgagor be given actual notice for demand of payment and of the exercise of the option to accelerate the entire balance of the debt. Otherwise, the mortgagor could lose his property at a trustee's sale of which he is unaware by actual notice. *Covington v. Burke*, 413 S.W.2d 158 (Tex. Civ.App.—Eastland 1967, writ ref'd n. r. e.). The exercise of an option to accelerate the entire balance of a debt is a harsh remedy. The courts in Texas have looked with disfavor upon the exercise of this power, since great inequity may result. *It is incumbent on the mortgagee, in order to avail himself of this right of acceleration, to make a clear, positive, and unequivocal declaration in some manner of the exercise thereof, followed by an affirmative action towards enforcing the declared intention.* 39 Tex.Jur.2d, § 78, at pages 114–115, Mortgages and Trust Deeds." *Crow v. Heath*, 516 S.W.2d 225 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). (Emphasis ours.)

In the *Crow* case the court held that posting notice of a trustee's sale and mailing a copy of such notice does not constitute acceleration.

After appellee (Nob Hill) became aware of appellant Joy's letter of August 15, 1973, it timely requested Nob Hill to advise them as to the amount due Joy in order to clear any default. Also, George Merten, representing appellees, requested that Nob Hill through its attorney disclose the amount owed Joy. Each of these requests was made by appellee in order to cure any default, which they were willing and able to do in August, 1973. Even though appellee made repeated requests to Joy to ascertain the amount of which they were allegedly in default, so that they could make full payment of said amount, Joy never informed appellee what the exact amount of the default was, that the maturity of the notes had been accelerated, or that the full amounts of the notes were due.

Before the acceleration provision in a note may be resorted to and the whole debt matured, demand must first be made for the late installment due on the debt. Additionally, opportunity must be given to pay the late installment before the acceleration of the entire debt. *Stevens v. Bowie National Bank of Bowie, Texas*, 517 S.W.2d 686, 689 (Tex.Civ.App.—Fort Worth 1974, n. w. h.); *Hiller v. Prosper Tex, Inc.*, 437 S.W.2d 412, 415 (Tex.Civ.App.—Houston 1st Dist. 1969, n. w. h.); *Bischoff v. Rearick*, 232 S.W.2d 174, 176 (Tex.Civ.App.—El Paso 1950, writ ref'd n. r. e.); *Brown v. Hewitt*, 143 S.W.2d 223, 227 (Tex.Civ.App.—Galveston 1940, writ ref'd). This was not done.

Appellant's contentions that the judgment is not within the scope of the plead-

ings nor in compliance with Rule 683, Texas Rules of Civil Procedure, are without merit and they are overruled.

There being no findings of fact or conclusions of law requested or filed in this case, in accordance with Rule 296, Texas Rules of Civil Procedure, the trial court's judgment should be affirmed if it can be upheld on any legal theory that has support in the evidence. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962). Furthermore, in the absence of findings of fact and conclusions of law, the trial court's judgment, therefore, implies all necessary fact findings in support of the judgment and the assumption is that the trial court found every disputed fact in such a way as to support the judgment. *Alexander & Polley Construction, Inc. v. Spain*, 477 S.W.2d 301, 303 (Tex.Civ.App.—Tyler 1972, n. w. h.); *Irish v. Virdell*, 379 S.W.2d 935, 937 (Tex.Civ. App.—Austin 1964, writ ref'd); *Weber v. Hesse Envelope Co.*, 342 S.W.2d 652, 655 (Tex.Civ.App.—Dallas 1960, n. w. h.); and *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1950). In seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto it is proper to consider only that evidence most favorable to the appellee and to disregard entirely that which is opposed to it or contradictory in its nature. *National Military Mutual Life Insurance Co. v. Cross*, 379 S.W.2d 96, 98 (Tex.Civ.App.—Corpus Christi 1964, n. w. h.); *Renfro Drug Co. v. Lewis*, supra.

We have examined the entire record in this case and have concluded that there is sufficient evidence to support the trial court's findings and judgment and that such findings are not against the great weight and preponderance of the evidence. Each of appellants' points of error has been considered. They are overruled.

Finding no reversible error the judgment of the trial court is affirmed.