**AFFIRMED and Opinion Filed April 27, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00854-CV

**SONIA M. CASTILLO, Appellant**
**V.**
**BRANCH BANKING & TRUST COMPANY, SUCCESSOR-IN-INTEREST**
**TO COLONIAL BANK, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16153**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Reichek
Opinion by Justice Reichek

This case involves a dispute over who has the rights to proceeds from the sale

of property. Branch Banking & Trust Co. brought suit against Sonia M. Castillo

seeking a declaration that its lien on the property was superior to Castillo's.

Following competing motions for summary judgment, the trial court granted the

Bank's motion and denied Castillo's, declared the Bank's lien superior, and ordered

that the Bank held exclusive rights to the funds. Castillo challenges those rulings on

appeal. For the reasons set out below, we affirm the trial court's judgment.

## Factual Background

Castillo is the longtime secretary and "dear friend" of James C. Morris. In 2006, Morris took out two notes with Colonial Bank. The notes were revolving lines of credit. Note 1 was $1.5 million and, after amendment, had a maturity date of July 11, 2012. Note 2 was $500,000 and, after extensions, had a maturity date of September 15, 2009. The notes were secured by property at I-635 and George Bush Tollway pursuant to Deeds of Trust.

Colonial Bank failed, and the FDIC subsequently sold Colonial's assets, including the Morris notes, to Branch Banking & Trust ("the Bank"). After the Bank obtained the Notes, Morris defaulted. Although the Bank sent notice of default, opportunity to cure, and intent to accelerate, the Bank took no other action until it sued Morris on May 2, 2011 for breach of the Notes. Morris counterclaimed in February 2013, challenging the validity and enforceability of the notes and deeds of trust. Morris sought declarations regarding (1) the validity and enforceability of the loan documents, (2) the rights of the parties as to the "nature of the lawful obligations, if any, imposed on [him]" by the loan documents, and (3) the rights of the parties as to the real property, "as no assignments to [the Bank] has been made of any security interest in the property and fraudulent, forged or altered documents appear in its chain of title." In addition to declaratory relief, Morris brought causes of action for fraud, fraud in the inducement, negligence and negligent

2

misrepresentation, breach of contract, and breach of fiduciary duty and duty of good faith and fair dealing. The Bank did not seek to foreclose on the lien while the parties litigated the legitimacy of the legal instruments by which the lien was established.

Litigation continued for more than four years, delayed in part by Morris twice filing for bankruptcy. Castillo was listed as a creditor of Morris in both bankruptcies. Ultimately, the trial court granted partial summary judgment in the Bank's favor and left the remaining issues to be tried to a jury. Shortly before the jury trial, Castillo sued Morris in district court in Collin County, claiming she loaned him money and he did not repay her. Two days after she filed the suit, the trial court signed an Agreed Judgment awarding Castillo about $300,000. Nine days later, on February 20, 2015, Castillo filed her abstract of judgment in Dallas County.

The Morris case was tried to a jury in April, and the jury found in the Bank's favor. The trial court signed the final judgment in October 2015, and Morris appealed to this Court, which affirmed the judgment on August 24, 2017. *See Morris v. Branch Banking & Trust Co.*, No. 05-15-01249-CV, 2017 WL 3634334, at \*1 (Tex. App.—Dallas Aug. 27, 2017, pet. denied) (mem. op.). Morris then appealed to the Texas Supreme Court, which denied review on January 12, 2018. Finally, he appealed to the United States Supreme Court, which denied Morris's petition for writ of certiorari on October 1, 2018. 139 S. Ct. 122 (2018).

While the appeal was pending, the following occurred. On September 27, 2017, one month after this Court affirmed the judgment, the Bank filed a post-judgment application for appointment of a receiver to take possession of the property and sell it. The trial court appointed the receiver and instructed him to take possession, market, collect rents, and sell the property and to pay the proceeds to the Bank. Thereafter, on January 8, 2018, Castillo filed an "involuntary bankruptcy petition" against Morris to stop the sale of the property by the receiver. Shortly after the petition was filed, the bankruptcy court issued an order directing both Castillo and Morris to appear and show cause why the petition should not be dismissed. The bankruptcy court noted Morris's previous bankruptcy filings involving the property and indicated its "concern" that Castillo, who was Morris's "secretary for 34 years," had filed the petition in violation of a "bar order" precluding Morris from any refiling for two years. Thereafter, Castillo filed a motion to dismiss the bankruptcy, which the court granted on April 27, 2018.

One month later, after the receiver moved for approval of sale of the property, Castillo intervened in the state court post-judgment receivership proceeding. She alleged she had a "proportionate interest" in Morris's assets based on the 2015 agreed judgment and her subsequent abstract of judgment. She also alleged that the Bank had "no superior lien or other rights superior" to hers with respect to Morris's nonexempt assets.

4

The property was sold in November 2018 for $2.25 million. As part of an escrow agreement, $400,000 was held in escrow pending resolution of Castillo's abstract of judgment. The trial court ordered $1.275 million of the remaining proceeds distributed to the Bank and discharged the receiver.

The Bank brought this declaratory judgment suit against Castillo to determine the rights to the funds held in escrow. In its petition, the Bank alleged it has a deed of trust lien on the property filed in 2006 that is superior to Castillo's abstract of judgment filed in 2015 and sought a corresponding declaration. Castillo filed an answer asserting a general denial and affirmative defenses, including the statute of limitations. She alleged that the Bank did not timely assert its rights under the deed of trust and consequently its claims as to priority are barred by limitations.

The parties filed cross motions for summary judgment on the limitations issue. In her motion for summary judgment, Castillo asserted that she and the Bank are both claiming priority to the sales proceeds, which are not sufficient to pay both judgments. She asserted that her 2015 abstract of judgment had priority over the Bank's 2006 deed of trust lien because the Bank's deed of trust lien became "void" when it failed to foreclose on the property within four years of the accrual of the cause of action. She asserted that the Bank filed suit on the notes in 2011, but did not seek foreclosure on the deeds of trust. And, even allowing for tolling of limitations during the bankruptcies, she argued that the latest that limitations could

have expired was June 25, 2016, long before the Bank sought its remedy under the deed of trust. Consequently, she asserted the trial court should declare that her judgment lien was superior to the Bank's.

The Bank responded to the motion and filed its own traditional motion for summary judgment on the ground that limitations had not run on its deed of trust lien because limitations was tolled not only by the three bankruptcy proceedings and subsequent receivership but also by the underlying *Morris* litigation in which Morris filed a counterclaim challenging the validity of the lien. Alternatively, it argued the federal "extender" statute extended limitations to six years instead of four. *See* 12 U.S.C. § 1821(d)(14)(B).

The trial court granted the Banks's motion for summary judgment and denied Castillo's. The trial court decreed that (1) the Bank's lien is superior to Castillo's "purported abstract of judgment lien"; (2) the sale of the property was free and clear of Castillo's purported lien; and (3) the Bank had the exclusive right to and is entitled to the escrowed funds. Finally, the trial court ordered that the Bank recover its attorney's fees from Castillo. Castillo appealed.

### Standard of Review

We review the trial court's ruling on a motion for summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional motion for summary judgment, the moving party has the burden to

6

demonstrate that no genuine issue of material fact exists and, therefore, it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E & P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). More specifically, the moving party must present evidence conclusively establishing its claim or negating an element of the respondent's claim or defense as a matter of law. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). When considering whether this burden has been met, we review the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in the nonmovant's favor, and resolve all doubts against the motion. *Lightning Oil Co.*, 520 S.W.3d at 45. If both parties move for summary judgment and the trial court grants one motion and denies the other, we review both parties' summary judgment evidence and determine all questions presented. *Id*. We then render the judgment the trial court should have rendered. *Id*.

## Analysis

On appeal, Castillo challenges the trial court's granting of the Bank's motion for summary judgment and the denial of hers. She argues that her judgment lien on the property is the only valid lien and has priority over the one claimed by the Bank. Specifically, she asserts that (1) even considering tolling as a result of the intervening bankruptcy cases, limitations would have expired long before the Bank sought a remedy under its deed of trust and (2) there were no circumstances giving rise to a

7

tolling of limitations other than the bankruptcy stays. As to the second argument, she asserts the 2011 *Morris* litigation did not toll limitations and the federal "extender statute" did not extend limitations to six years. Because we conclude the *Morris* litigation is dispositive of the issue, we begin with it.

The statute of limitations for a lien under a deed of trust is four years. Under section 16.035(a), a person must bring suit for the recovery of real property or the foreclosure of a real property lien not later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a). A "real property lien" includes a deed of trust. *See id.* § 16.035(g)(2). Section 16.035(b) provides that a sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the date the cause of action accrues. *Id.* § 16.035(b) (West 2002). Once limitations expires, the real property lien and a power of sale to enforce the real property lien become void. *Id.* § 16.035(d).

The cause of action for foreclosure of a deed of trust lien accrues—and limitations commences—on the maturity date of the final installment or when the holder exercises its option to accelerate. *See Hardy v. Wells Fargo Bank, N.A.*, No. 01-12-00945-CV, 2014 WL 7473762, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.) (if no acceleration, holder's cause of action for foreclosure accrues on maturity date of final installment); *PNC Mortg. v. Howard*,

No. 05-17-01484-CV, 2019 WL 2575052, at *6 (Tex. App.—Dallas June 24, 2019, pet. filed) (mem. op.) (explaining that once note is accelerated, cause of action for foreclosure of deed of trust lien securing note accrues and sale of property must occur within four years). Unequivocal action, such as filing suit indicating that the entire debt is due, is sufficient to show acceleration. *See Joy Corp. v. Nob Hill N. Props., Ltd.*, 543 S.W.2d 691, 694–95 (Tex. Civ. App.—Tyler 1976, no pet.).

Here, the evidence showed that the maturity date on Note 1 was July 11, 2012. Before that date, however, the Bank sued Morris for breach of the Note on May 2, 2011, which was the equivalent of accelerating the Note. *See id.*, 542 S.W.2d at 694–95. Consequently, the cause of action on Note 1 accrued on May 2, 2011 and, absent any tolling, limitations expired on May 2, 2015.[1] Note 2, however, accrued on its maturity date, which was September 15, 2009. *See Hardy*, No. 01-12-00945-CV, 2014 WL 7473762, at *3. Thus, absent any tolling provision, limitations of Note 2 expired on September 15, 2013.

The Bank asserts limitations was tolled by the *Morris* litigation when Morris counterclaimed, challenging both his liability on the Notes and the validity of the

---

[1] The Bank argues the accrual date on this Note was January 27, 2012, a date it pulls from its first amended petition in the *Morris* litigation. The Bank provides no authority for its position and does not explain why the date of the original petition is not controlling. In its motion, it simply claimed that Morris did not dispute that date in the underlying suit and "[f]or that reason it is used in this action." Even assuming the truth of that statement, Castillo was not a party to the *Morris* suit and the Bank does not explain how Castillo would therefore be bound by Morris's failure to object in that action. Regardless, given our analysis with respect to the tolling of the underlying litigation, our result would be the same under either date.

deed of trust lien. The Bank argues limitations was tolled from the date of the counterclaim, February 18, 2013, until the appeals ended on October 1, 2018, rendering the Bank's rights under the deed of trust valid at the time it sought a forced sale through a receiver in October 2017. Castillo does not dispute that if the underlying *Morris* litigation tolled limitations in this case, then the Bank's rights under the deed of trust were not lost to limitations. But, Castillo disputes that the *Morris* litigation tolled limitations.

The primary purpose of limitations statutes is to prevent litigation of stale or fraudulent claims. *Erikson v. Renda*, 590 S.W.3d 557, 569 (Tex. 2019). Limitations statutes afford plaintiffs what the legislature deems a reasonable time to present their claims and protection for defendants and the courts from having to deal with cases in which the search for the truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *Id.*

At the same time, Texas courts have long recognized that "[w]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Cavitt v. Amsler*, 242 S.W. 246, 249 (Tex. App.—Austin 1922, writ dism'd w.o.j.) (op. on mot. for reh'g). In *Cavitt*, the plaintiff (Cavitt) sued Amsler to have shares in a milling company that

10

were in Amsler's name canceled and reissued to him, alleging he was owner. Cavitt recovered judgment in that case establishing his ownership. *Id.* at 248. Subsequently, he filed a petition for mandatory injunction to compel the milling company to recognize him as a stockholder by issuing the Amsler stock to him, alleging that, despite the judgment in his favor, the company had refused to do so. He also alleged the company was paying the dividends to Amsler. Soon after the second suit was filed, Amsler appealed the judgment in the first lawsuit, which postponed the second suit pending the resolution of the appeal. The appeals court subsequently affirmed the first judgment on January 19, 1920. Cavitt subsequently obtained judgment in the injunction suit. *Id.*

The suit that was the focus of the appeal involved Cavitt's claim to recover dividends paid by the milling company to Amsler. *Id.* at 246. Cavitt lost that suit, and the question on appeal was whether Cavitt's cause of action was barred by limitations. In ruling in Cavitt's favor, the court reasoned as follows:

> We hold that the statute of limitations was suspended during the appeal referred to, for the reasons that, if [Cavitt] knew that the milling company was paying dividends to Amsler, and had filed suit against the company and against Amsler to recover the same, the company could and doubtless would have replied that the issue involved in such suit was the ownership of the stock claimed by both Amsler and Cavitt; that Cavitt could not recover dividends until he established his title to the stock; and that this was the issue pending in the case on appeal.

*Id.* at 248–49. Thus, limitations on the suit for dividends was tolled while the suit to determine ownership of the stock was being appealed.

11

Decades later, when the Texas Supreme Court considered for the first time tolling limitations in attorney malpractice cases, it relied on the principle set out in the *Cavitt* case. *See Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991). The court applied the same rationale to a client's subsequent malpractice claim against his attorney reasoning, among other things, that the viability of the second cause of action depended on the outcome of the first. *Id*. at 157. The court subsequently reaffirmed what has since been called the *Hughes* rule, explaining that we must "appropriately balance the competing concerns of the need to bar stale claims and avoid prejudice to defendants yet preserve a reasonable opportunity for plaintiffs to pursue legitimate claims." *See Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001).

In sum, cases such as *Cavitt* and *Hughes* and its progeny teach that a statute of limitations is tolled for a second cause of action in instances where the viability of that second cause of action necessarily depends upon the outcome of the first case and the pursuit of the second case prior to that outcome would either be improper or result in judicial complications. *See Rogers v. Ricane Enters.,* 930 S.W.2d 157, 167 (Tex. App.—Amarillo 1996, writ denied) (op. on remand).

Applying that principle here, we conclude limitations was tolled by the *Morris* litigation. In the first cause of action, the Bank sued Morris to recover on the two notes secured by the property, and Morris counterclaimed, challenging his

responsibility on the notes as well as the validity of the liens securing those notes. Once the Bank established Morris's liability on the notes and defeated his claim as to the validity of the liens, it requested the trial court appoint a receiver to sell the property and distribute the proceeds to it. Under the particular circumstances at issue here, requiring the Bank either to foreclose on liens while their validity was under attack or lose their rights under the statute of limitations created the kind of judicial impediment contemplated by the court in *Cavitt*. Castillo argues that the Bank was not prevented from seeking foreclosure during the *Morris* suit. While that is true, just as the court explained in *Cavitt*, had the Bank sought to foreclose, Castillo "could and doubtless would" have taken action to stop a sale of the property until the issues in the suit were resolved. *See Cavitt*, 242 S.W. at 249. "[T]he policy underlying the concept of tolling the statute of limitations for a second or dependent cause of action is that the courts will not require a party to do a useless, burdensome, or duplicative act that ties up both litigant and court time unnecessarily, either without a chance of final resolution (until the underlying suit is resolved) or creating the possibility of conflicting results if two different suits were filed." *Ricane*, 930 S.W.2d at 167.

Statutes of limitations are meant to cut off plaintiffs who have slept on their rights. *S.V. v. R.V.*, 933 S.W.2d 1, 32 (Tex. 1996) (Owen, J., dissenting). And, it is "neither uncommon nor undesirable for a lender, faced with a suit . . . challenging

13

its right to foreclose on property, to seek court confirmation that it is within its rights and has performed all acts necessary to proceed with foreclosure under a deed of trust." *Metcalf v. Wilmington Sav. Fund Soc'y, FSB*, No. 03-16-00795-CV, 2017 WL 1228886, at *4 (Tex. App.—Austin Mar. 29, 2017, pet. denied) (mem. op.). Here, the Bank did not slumber on its rights despite efforts by both Morris and Castillo to delay collection with the counterclaims and an obstacle course of bankruptcy filings. It timely sued Morris for breach of the notes and litigated its case as well as the numerous counterclaims propounded by Morris related to the notes and the validity of the liens that secured them. The Bank obtained a judgment in its favor, and once it was successful in Morris's first level of appeal, sought a receiver to sell the property.

We conclude the statute of limitations was tolled by the *Morris* litigation, beginning on the date Morris filed his counterclaim, February 18, 2013, and ending on the date United States Supreme Court refused review on October 1, 2018. *See Apex Towing*, 41 S.W.3d at 119 (tolling period lasts "until all appeals on the underlying claim are exhausted *or* the litigation is otherwise finally concluded"); *Cavitt*, 242 S.W. at 248–49 (tolling limitations during appeal of underlying case). The Bank requested appointment of a receiver to sell the property on September 27, 2017. The trial court appointed the receiver on October 23, 2017 and ordered the property to be sold. The property was subsequently sold on November 20, 2018.

14

Note 1 accrued on May 2, 2011 and had more than two more years remaining on limitations when Morris's counterclaim was filed; Note 2 accrued on September 15, 2009, and had about seven months remaining on limitations at the time Morris's counterclaim was filed. Accordingly, under any scenario (when the Bank requested the property sold, when the trial court appointed a receiver and ordered the property sold, or when the sale was completed), the Bank's deed of trust liens were not void because limitations had not run. The Bank conclusively established that limitations did not bar its claims. Accordingly, the trial court did not err in granting the Bank's motion for summary judgment, declaring the Bank's lien superior to Castillo's, and ordering the Bank had the exclusive right to the funds held in escrow. We overrule Castillo's issues.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

190854F.P05

15



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SONIA M. CASTILLO, Appellant

No. 05-19-00854-CV          V.

BRANCH BANKING & TRUST
COMPANY, SUCCESSOR-IN-
INTEREST TO COLONIAL BANK,
Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-16153.
Opinion delivered by Justice
Reichek; Justices Myers and Partida-
Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BRANCH BANKING & TRUST COMPANY, SUCCESSOR-IN-INTEREST TO COLONIAL BANK recover its costs of this appeal from appellant SONIA M. CASTILLO.

Judgment entered April 27, 2020

16