TEXACO, INC. v. GEORGE E. CREEL, GRAHAM R. CREEL AND LORENE G. BRAME

No. 8115SC806

(Filed 15 June 1982)

1. Vendor and Purchaser § 1.3— construction of lease agreement—right of first refusal and fixed price option

The trial judge erred in denying plaintiff's motion for summary judgment for specific performance of a $50,000 fixed price option contained in a lease agreement. A right of first refusal in plaintiff in the lease agreement was meaningful only if the offer by a third party was at a price lower than that established under the fixed price option, and plaintiff conformed to the requirements necessary to exercise this option.

2. Contracts § 22; Vendor and Purchaser § 2.4— tender of purchase price proper

The tender by plaintiff of a $50,000 check drawn on the bank account of plaintiff's law firm was proper tender in exercise of a fixed price option where (1) there was evidence that no objection to a tender by check was made at the time of the purported tender, (2) tender of the check was the most practical tender possible under the circumstances, and (3) tender to one defendant's attorney, instead of the defendant personally, was tender to one apparently authorized to receive it and was sufficient.

APPEAL by plaintiff and cross-appeal by defendants from *Martin, Judge.* Order from which plaintiff appeals entered 26 February 1981, and judgment from which defendants appeal entered 3 March 1981, in Superior Court, ORANGE County. Heard in the Court of Appeals 31 March 1982.

*Newsom, Graham, Hedrick, Murray, Bryson & Kennon, by Josiah S. Murray, III and Joel M. Craig, for plaintiff-appellant and cross-appellees.*

*Newitt, Bruny & Koch, by John A. Newitt, Jr. and Roger H. Bruny, for defendant-appellees and cross-appellants.*

BECTON, Judge.

Plaintiff instituted this action against defendants to obtain specific performance of a fixed price option provision contained in an agreement under which plaintiff leased a certain parcel of land from defendants' predecessors in title. Defendants counter-claimed, alleging breach of the first refusal provision of the con-tract and seeking monetary damages. The trial court granted partial summary judgment to defendants on the issue of specific performance and, after evidence on the question of damages to defendants, granted plaintiff's motion for a directed verdict. The major issue considered on appeal involves the propriety of the trial court's grant of partial summary judgment for defendants and its denial of summary judgment for plaintiff. For the reasons set forth below, we reverse.

The Lease

On 9 September 1949, plaintiff, while doing business under the corporate name of The Texas Company, entered into a lease agreement whereby Thomas R. Pendergraft and wife Inez P. Pendergraft, as lessors, demised to plaintiff certain real property located on Franklin Street in Chapel Hill, North Carolina. The ten-year lease was to commence 1 February 1950, and contained four options to renew, each for a period of five years. The lease also contained the following option to purchase:

> (11)— Option to Purchase. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the de-mised premises, free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof,
>
> > (a) for the sum of *Fifty Thousand* dollars; it being understood that if any part of said premises be con-demned, the amount of damages awarded to or accepted

by lessor as a result thereof shall be deducted from such price,

(b) On the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offeror, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase. No sale of or transfer of title to said premises shall be binding on lessee unless and until these requirements are fully complied with.

Any option herein granted shall be continuing and pre-emptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal thereof.

Upon receipt of lessee's notice of election to exercise any option granted herein, which notice shall be given in accordance with the Notice Clause of this lease, lessee shall have a reasonable time in which to examine title and, upon completion of such examination if title is found satisfactory, shall tender the purchase price to lessor, and lessor shall thereupon deliver to lessee a good and sufficient Warranty Deed conveying the premises to the lessee free and clear of all encumbrances (including without limiting the foregoing the rights of dower and/or curtesy). All rentals and taxes shall be prorated between grantor and grantee to the date of delivery of the aforesaid deed.

Lessee's notice of election to purchase pursuant to either of the options granted in this clause shall be sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option period expires.

The Purchase Option of $50,000.00 set out above in Clause 11 of this lease can only be exercised at the end of the

ten-year lease period or at the end of either of the four five-year renewal privileges contained in Clause 12. . . .

## The Arguments and Contentions

On 4 February 1980, plaintiff filed notice of *lis pendens* and on 25 February, 1980, it filed this action against defendants, successors in interest to Thomas and Inez Pendergraft, seeking specific performance of the provision granting it the option to purchase the property for $50,000. The complaint alleged that, on 17 January 1980, plaintiff, through an authorized agent, gave notice of its election to purchase the property under the fixed price option and that further, on 31 January 1980, prior to the 12 o'clock midnight expiration of the lease term, plaintiff gave notice of its election to purchase to the attorney of defendant George Creel. On 1 February 1980, plaintiff, through its attorney, tendered the fixed price option amount of $50,000 to each defendant or his agent or representative. Defendants, however, failed to deliver to plaintiff a warranty deed conveying the premises. Alleging that it had no adequate remedy at law, plaintiff sought an order of specific performance.

Defendants answered, alleging that, under the terms of the lease agreement, the $50,000 option was valid unless there existed a "bona fide offer for said premises, received by lessor [defendants] and which offer lessor desires to accept." Defendants asserted that there was a bona fide offer of $217,000 from William Graham Creel and Catherine Jane Creel; that the offer was hand delivered to plaintiff on 25 January 1980; and that, on 23 January 1980, defendants also received a bona fide offer of $155,000 from T. Sherwin Cook, Inc. which offer was also communicated to plaintiff on 28 January 1980. Defendants contended that plaintiff's exercise of its option committed it to the $217,000 figure, and they counterclaimed for that amount. Further, defendants alleged that plaintiff's filing of the notice of *lis pendens* created a cloud upon the property; that, as a result of this, defendants were unable to convey title to William G. Creel and Catherine J. Creel; that defendants were damaged in the amount of $217,000; and that plaintiff's action constituted an unfair trade practice for which defendants were entitled to treble damages.

In its reply, plaintiff denied that it had elected to purchase the property under the first refusal provision, denied any damage

to defendants by virtue of the filing of a notice of *lis pendens*, and denied any unfair trade practice on its part. Plaintiff sought a dismissal of the counterclaims.

On 9 February 1981, after extensive discovery, plaintiff filed a motion for summary judgment. Defendants responded to plaintiff's motion with a cross-motion for summary judgment.

The Trial Court's Rulings

On 26 February 1981, the trial court entered an order finding no genuine issue of material fact and further finding, among other things, that, on or about 3 January 1980, the defendants received an offer from T. Sherwin Cook, Inc. to purchase the defendants' property for $155,000. The trial court concluded that on that date the plaintiff's right to purchase the property of defendants under the fixed price option of $50,000 was terminated. The trial court, therefore, granted in part the defendants' motion for summary judgment, concluding that plaintiff was not entitled to the equitable remedy of specific performance and ordering dissolution of the *lis pendens*. The trial court ordered that the issues contained in defendants' counterclaims be set for determination by a jury. Plaintiff excepted to this judgment and later gave notice of appeal. On 26 February 1981, a jury heard the evidence on defendants' counterclaim. At the end of the evidence, the trial court entered a judgment granting plaintiff's motion for a directed verdict. From this judgment the defendants gave notice of appeal.

I

[1] The first question presented is whether the trial court erred in denying plaintiff's motion for summary judgment in which plaintiff sought specific performance of the $50,000 fixed price option contained in the lease agreement.

The purpose of summary judgment under G.S. 1A-1, Rule 56 is to "bring litigation to an early decision on the merits without the delay and expense of trial [in cases in which] it can be readily demonstrated that no material facts are in issue." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E. 2d 823, 829 (1971). Upon a motion for summary judgment, the trial court does not attempt to resolve issues of fact; rather, it determines whether there is a genuine issue of material fact necessitating a trial.

*Lambert v. Power Co.*, 32 N.C. App. 169, 231 S.E. 2d 31, *disc. review denied,* 292 N.C. 265, 233 S.E. 2d 392 (1977). Summary judgment, being a drastic remedy, must be used with due regard to its purpose and to its requirements so that no person is deprived of trial on a genuine, disputed factual issue. *Kessing v. Mortgage Corp.*

In the case before us, we find no genuine issue of material fact. We reach a result contrary to that of the trial court, however, because our interpretation differs from that court's interpretation of the fixed price option and the first refusal clause of the lease agreement. In construing this contract, we are bound by the general rule that a contract must be read as a whole and that individual clauses and particular words in an agreement must be considered in connection with the rest of the agreement. *Robbins v. Trading Post,* 253 N.C. 474, 117 S.E. 2d 438 (1960).

In reaching our decision, we have paid particularly close attention to two cases interpreting substantially identical option clauses. In *Texaco, Inc. v. Rogow,* 150 Conn. 401, 190 A. 2d 48 (1963), Texaco was the lessee under a 1940 lease agreement that ran for ten years. Under the agreement, the lessee had an option to purchase the premises for $16,000. That option, however, was exercisable only after the end of the ninth year of the lease. Also contained in the contract was a provision giving lessee the right of first refusal should lessors receive a bona fide offer for the premises. Shortly before the expiration of the ninth year, lessor received an offer for $44,000 and, pursuant to the terms of the lease, communicated that offer to the lessee. Refusing this offer, lessee attempted, after the end of the ninth year, to exercise the fixed price option. When the lessor refused to accept formal tender of the fixed price, lessee instituted an action for specific performance. The Supreme Court of Connecticut found:

> There is no language whatever in the lease indicative of any intention other than that the first refusal provision was the only one under which the plaintiff could purchase the property during the first nine years and that, after that period, the first refusal provision was one of two option provisions, each of which was on a parity with the other.

*Id.* at 408, 190 A. 2d at 52. The court held that the lessee had to accept the first refusal offer as provided in the lease or risk los-

ing the right to purchase the property thereafter. In the opinion of the court, the fixed price option was rendered ineffective by the offer of the third party, and it could not be exercised even after the close of the ninth year.

We believe that the *Rogow* opinion renders completely meaningless the fixed price option and ignores language establishing, for practical purposes, the relationship of the two option provisions. We prefer the rationale supporting the opinion of *Crowley v. Texaco, Inc.*, 306 N.W. 2d 871 (S.D. 1981), which dealt with the same option provisions as found in the present case. Relying on the case of *Butler v. Richardson*, 74 R.I. 344, 60 A. 2d 718 (1948), the South Dakota court held that the first refusal option has no effect upon the fixed price option. The first refusal option provides only a means whereby the lessors, if they desire, can induce an acceleration of lessee's decision to purchase by affording them an opportunity to purchase at a price more advantageous to them than the price fixed in the option. Under this interpretation, therefore, the first refusal option is meaningful only if the offer by a third party is at a price lower than that established under the fixed price option. The lessee's rights under the fixed price option continue and are not extinguished by the failure of the lessee to exercise a first right to purchase after notice of an offer from a third person.

After reviewing these decisions and applying the rules of construction, we are of the opinion, and so hold, that the right of first refusal, designated an option to purchase, had no effect on the fixed price option. Since the options contained in the contract were "continuing and pre-emptive, binding on lessor's heirs, devisees, administrators, executors, or assigns. . .," a third party purchaser of the property would purchase only at a price less than the one established by the fixed price option. This interpretation of the option provision of the contract is the only interpretation which gives effect to the fixed price option. Thus, Texaco's right to purchase the property at the price of $50,000 was not affected by the offers made by third party purchasers. If, therefore, Texaco conformed to the requirements necessary to exercise the option, summary judgment in its favor would have been proper.

## II

The only remaining question we consider is whether Texaco properly tendered the sum of $50,000 on 1 February 1980, thereby conforming to the option requirements. Before an action will lie for specific performance, plaintiff must show that he offered to perform his part of the agreement or that such offer was rendered unnecessary by the refusal of the defendant to comply. *Winders v. Kenan,* 161 N.C. 628, 77 S.E. 687 (1913).

[2] Defendants, in their cross-appeal, allege two defects in plaintiff's tender. First, they contend that plaintiff's tender of the $50,000 by check drawn on the bank account of plaintiff's law firm was not a proper tender. Citing the case of *Lumber Co. v. Privette,* 178 N.C. 37, 100 S.E. 79 (1919), defendants argue that a check is never legal tender unless there is evidence that the party to whom the check was tendered was willing to accept the check in lieu of legal tender money. The burden would be upon Texaco in the instant case to prove that defendants waived tender in cash.

It has generally been held that an objection to a tender by check is waived unless it is expressly made at the time of the purported tender. Annot., 23 A.L.R. 1284 (1923), supplemented at 51 A.L.R. 393 (1927). The reason for the requirement that there be an express objection to the form of tender is that this allows the party making the tender to secure the specific money for an acceptable tender. Based on this, plaintiff submits that the burden of proving the defendants' waiver of tender of the option amount in cash was satisfied by uncontroverted affidavits of Helga Nichols and Paulette Shaw who stated that none of the three persons to whom tender was made objected to the form of the tender. We agree with the plaintiff. Furthermore, we must note the extremely difficult time plaintiff would have had tendering $50,000 among the three defendants. One of those defendants owned a life estate in the property, thus forcing the plaintiff to determine the relative, but unequal interests of the parties. For all practical purposes, tender of the check appears to have been the most practical tender possible under the circumstances.

Defendants' second contention is that tender of payment was not properly made to defendant George E. Creel, because it was not delivered to him personally. The record shows that, as to

George Creel, the tender was made to his attorney, to whom Creel had referred plaintiff on questions " . . . about the lease or options. . . ."

Generally, a tender must be made to the person entitled to receive it or it is invalid. 86 C.J.S. Tender § 39 (1954). "As a general rule it must be made to the creditor, or to one either actually or apparently authorized to receive tender." *Id.* Because George Creel had indicated that his attorney would handle the property for him, we believe that the tender to that attorney was tender to one apparently authorized to receive it and was, therefore, sufficient.

Furthermore, in studying the question of tender, we note that defendants took no exception to the trial court's finding that there was no genuine issue as to the fact that the plaintiff tendered to defendants the sum of $50,000 for purchase of the property. We affirm that finding.

For the reasons set forth above, we conclude that the trial court erred in granting partial summary judgment to the defendants. We remand the case for entry of summary judgment for the plaintiff and for an order directing specific performance on the fixed option agreement.

Reversed and remanded.

Judge WELLS and Judge HILL concur.