**Donna J. SMITH, Shirley M. Wormley, and Carol S. Fensterman, Trustees Under The Eunice P. Lewis Trust, Appellees,**

v.

**Steven E. BERTRAM and Marsha L. Bertram, Appellees,**

and

**Corey Development, Ltd., Appellant.**

**No. 97–1772.**

Supreme Court of Iowa.

Dec. 22, 1999.

ˈM. Wayne Oltrogge of Oltrogge Law Office, P.C., Clear Lake, for appellant Corey Development, Ltd.

Christopher D. Stombaugh of Kopp, McKichan, Geyer & Skemp, Platteville, Wisconsin, for appellees Steven and Marsha Bertram.

William C. Fuerste of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellees Donna J. Smith, Shirley M. Wormley, and Carol S. Fensterman.

Considered by LARSON, P.J., and CARTER, TERNUS, CADY, and HARRIS,* JJ.

* Senior judge assigned by order pursuant to    Iowa Code section 602.9206 (1999).

CARTER, Justice.

Defendant, Corey Development Ltd. (Corey Development), an assignee of an option to purchase land, appeals from a declaratory judgment determining that its option rights had been extinguished as a result of subsequent transactions. The declaratory judgment action had been brought by Eunice P. Lewis, the owner of the land. The trustees of the Eunice P. Lewis trust have been substituted as plaintiffs following Eunice Lewis's death. The plaintiffs will be referred to herein as the Lewis interests.

Corey Development asserts that the district court was incorrect in finding that, when a contract contains both a fixed-price option and a right of first refusal of a third party's offer, an offer by a third party extinguishes the fixed-price option. It also contends that the district court erred in finding that the third-party offer was bona fide. We affirm the district court on both issues.

The Lewis interests commenced this action to determine the rights of the parties under a contract containing both a fixed-price option and a right of refusal on a third-party offer. Corey Development is an assignee of the rights of Louis and Michael Remakel, who contracted with the Lewis interests with respect to this land in 1992. The agreement in pertinent part contained two provisions: an option to purchase the real estate in question for $10,-000 per acre (totaling $250,000), which would last for five years from the date of the agreement, and a right of first refusal with respect to any third-party offer of purchase received by the Lewis interests.

Appellees Marsha and Steven Bertram, who were named as defendants in the declaratory judgment action, are Lewis's granddaughter and grandson-in-law. In March 1996 they submitted a formal offer to buy the real estate in question for $30,-000 per acre (totaling $750,000). This was accompanied by a $10,000 earnest money deposit. The Remakels, upon being notified of the Bertrams' offer, attempted to exercise their fixed-price option. This effort was rejected by the Lewis interests. In the alternative, the Remakels indicated that they would exercise their right of first refusal on the $30,000 per-acre offer without prejudice to litigating their rights under the fixed-price option.

The district court, in interpreting the agreement, admitted extrinsic evidence of the intention of the parties. Based upon testimony that (1) Lewis had insisted on the inclusion of a right of first refusal for the express purpose of allowing her to accept higher offers for the property than was provided in the fixed-price option and (2) the Remakels' attorneys, who prepared the option agreement, assured her that she could accept higher offers for the property subject to the Remakels' right of first refusal, the district court found that it was the intent of the parties that a third-party offer would extinguish the fixed-option price. Other relevant facts will be discussed in connection with the legal issues presented.

### I. *Standard of Review.*

A declaratory judgment action is reviewed as any other judgment. *Grinnell Mut. Reins. Co. v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 176, 178 (Iowa 1997). How the parties tried the case in the district court governs this court's scope of review. *In re Mt. Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988). The parties tried this action at law, and therefore, review is to correct errors at law. Iowa R.App.P. 4; *Grinnell Mut. Reins. Co. v. Recker*, 561 N.W.2d 63, 68 (Iowa 1997). The court is bound by the district court's findings of fact if those findings are supported by substantial evidence. Iowa R.App.P. 14(f)(1); *Recker*, 561 N.W.2d at 68. The court, however, is not bound by the district court's conclusions of law, and the court may inquire into whether the district court's ultimate conclusions were materially affected by improper conclusions of law. *Recker*, 561 N.W.2d at 68.

## II. *Interpretation of the Agreement.*

■ The written agreement at issue in this case provides:

1. Seller grants to Buyer the option to purchase the Remaining Real Estate, that listed on Exhibit A, at the price which had been paid per acre for the original real estate purchased, noted on Exhibit B.

2. The Seller gives the Buyer a right of first refusal such that if she receives an offer to purchase the real estate identified on Exhibit A, she will notify the Buyer of the price, terms and conditions of the offer, which price, terms and conditions must be in writing and give Buyer the opportunity to purchase the remainder of the real estate identified on Exhibit A for the same price and/or the same terms and conditions. This right of first refusal must be exercised within thirty (30) days of the written notification to Buyer of the offer by a third party on the real estate.

. . . .

4. This Agreement shall be in force and effect for a period of five (5) years from the date of its execution.

This court was presented with a case in which the contract provided both a fixed-price option and a right to purchase at the price tendered by a third person in *Imperial Refineries Corp. v. Morrissey,* 254 Iowa 934, 119 N.W.2d 872 (1963). In that case, we did not determine the effect of the dual options for purposes of interpreting the agreement. We found that plaintiff had waived the right to exercise the fixed-price option through an unqualified offer to match a third-party offer. *Imperial Refineries,* 254 Iowa at 939–40, 119 N.W.2d at 875. That situation is in sharp contrast to the Remakels' careful efforts in the present case to preserve their rights under the fixed-price option.

Courts that have considered the effect of this type of dual-option agreement have reached differing results. One line of cases holds that the two provisions, unless otherwise provided for in the agreement, are separate and distinct, and the lessee can exercise his option to purchase for a fixed price without regard to the provision for the right of first refusal. *See Shell Oil Co. v. Prescott,* 398 F.2d 592, 593–94 (6th Cir.1968) (finding that lessee could exercise fixed-price option after lessor received third-party offer; however, lease indicated that the lessee's failure to exercise right-of-first-refusal option shall not affect lessee's fixed-price option); *McDonald's Corp. v. Lebow Realty Trust,* 710 F.Supp. 385, 388 (D.Mass.), *aff'd,* 888 F.2d 912 (1st Cir.1989) (finding no ambiguity and stating that notice of a bona fide third-party offer should be construed as requiring the lessee to either meet the third-party offer or promptly exercise the fixed-price purchase option); *Texaco, Inc. v. Creel,* 57 N.C.App. 611, 292 S.E.2d 130, 133–34 (1982) (determining that fixed-price option was not extinguished; however, lease provided that failure to exercise any option in one case shall not affect lessee's right to exercise such option in other cases); *Crowley v. Texaco, Inc.,* 306 N.W.2d 871, 873–74 (S.D. 1981) (same).

Another line of cases holds that the fixed-price option is extinguished once the lessor receives a bona fide third-party offer. *See Shell Oil Co. v. Blumberg,* 154 F.2d 251, 252–53 (5th Cir.1946) (finding that, after lessee received notice of offer and refused to purchase the property, the fixed-price option lapsed); *Tarrant v. Self,* 180 Ind.App. 215, 387 N.E.2d 1349, 1353 (1979) (holding that, when lease does not prescribe which provision takes precedence over the other and the lessee receives notice of a bona fide third-party offer before exercising the option to purchase at a fixed amount, if the lessee refuses to exercise his first-refusal option, then he forfeits his right to purchase under the fixed-price option); *M & M Oil Co. v. Finch,* 7 Kan.App.2d 208, 640 P.2d 317, 321 (1982) (finding that, when lessee has notice of bona fide offer and fails to exercise right of first refusal, lessee loses any

right to exercise its fixed-price option); *Tantleff v. Truscelli,* 110 A.D.2d 240, 493 N.Y.S.2d 979, 984 (1985), *aff'd,* 69 N.Y.2d 769, 513 N.Y.S.2d 113, 505 N.E.2d 623 (1987) (same); *Markert v. Williams,* 874 S.W.2d 353, 357–58 (Tex.App.1994) (finding that lessee's fixed-price option was extinguished only because lessee failed to exercise it promptly and waited until after lessor had sold property; recognizing a distinction between immediate exercise of a fixed-price option and delayed exercise of the option).

Given the uncertainty as to the intent of the Lewis Remakel agreement, we are satisfied that the district court properly considered extrinsic evidence of the parties' intent. The rule of interpretation set forth in the Restatement of Contracts provides:

> A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.

Restatement (Second) of Contracts § 212(2), at 125 (1981). We have applied this rule in other interpretation issues coming before us. *See Borgen v. Klemm,* 391 N.W.2d 252, 256 (Iowa 1986); *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 107–08 (Iowa 1981); *Connie's Constr. Co., Inc. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975).

In interpreting the contract as it did, the district court credited the testimony of Eunice Lewis concerning the purpose for including the right-of-first-refusal clause in the agreement. In her deposition testimony given before her death, she indicated that this was in response to her insistence that she be given the right to accept higher third-party offers for the property. This is significant because we have recognized that a collateral agreement that operates as an inducement for entering into a contract may aid in interpretation of the primary agreement. *See Blunk v. Kuyper,* 241 Iowa 1138, 1145, 44 N.W.2d 651, 655–56 (1950).

Under the interpretation standards that we have approved, the district court's determination that the meaning of the agreement was in accordance with Eunice Lewis's testimony was a finding of fact. That finding is supported by substantial evidence. Consequently, we accept the district court's finding concerning the meaning of the agreement.

### III. *Did the Bertrams Make a Bona Fide Offer?*

As an alternative argument, Corey Development urges that the Bertrams' offer was not bona fide. As support for this contention, it strongly relies on this court's decision in *Imperial Refineries,* 254 Iowa at 944, 119 N.W.2d at 878. That case, like the present case, involved an agreement granting one of the parties a right of first refusal with respect to third-party offers.

In *Imperial Refineries* this court found that a priest's offer to purchase property from his mother was not a bona fide offer. We did not question the priest's motives or good intentions and accepted the contention that he would have made every effort to carry out the contract because he considered his purchase of the property a benefit to his mother and himself. However, given the facts and circumstances under which the offer was made, including the facts that the offer was for $60,000, the priest's salary was $1000 per year, and he had no appreciable assets, we concluded that the offer was not bona fide. *Id.* at 943–44, 119 N.W.2d at 878.

Our decision in *Imperial Refineries* relied heavily on the case of *Shell Oil Co. v. Kapler,* 235 Minn. 292, 50 N.W.2d 707 (1951). In that case, the jury had found that a third-party offer to purchase which was subject to a right of first refusal was not bona fide due to the offeror's financial inability to meet the terms of his offer. On posttrial motions, the trial court approved the jury's finding on that issue but granted a new trial based on evidentiary rulings. On appeal the Minnesota Su-

preme Court concluded that the evidentiary rulings did not warrant the granting of a new trial and upheld the jury's finding that the offer was not bona fide. *Kapler,* 50 N.W.2d at 713. In so doing, the court made two seemingly inconsistent pronouncements. The opinion initially states:

> Rules for testing a purchaser's financial ability to buy are not to be reduced to any unyielding formula, but must be flexible enough to accomplish their purpose according to the particular facts of each case. In ascertaining the rules reflected by an endless variety of cases, it is particularly important to bear in mind that no decision is authoritative beyond the scope of its controlling facts.

*Id.* at 712. In an apparent contradiction of that conclusion, the opinion later purports to lay down rigid bright line criteria for determining when a purchaser is financially able to buy. These suggested criteria are:

> Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand or (2) if he is personally possessed of assets—which in part may consist of the property to be purchased—and a credit rating which enables him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money—or as much thereof as he is unable to supply personally—by obtaining a *binding commitment* for a loan to him for that purpose *by a financially able third party,* irrespective of whether such loan be secured in part by the property to be purchased.

*Id.*

■ In choosing between the flexible approach to determining financial responsibility that was initially advanced in the opinion of the Minnesota court and the rigid criteria that it later espoused, we favor the former approach. Cases cited by the Minnesota court in support of its more structured rules for determining financial responsibility involve issues concerning a broker's entitlement to a commission after having secured an offeror for the property to whom the seller refused to sell based on a perceived lack of financing. The rules in those cases are designed to protect the seller's right to obtain reasonable assurance that a buyer tendered by a broker will be able to perform. Different considerations are involved in determining the bona fide nature of a third-party offer that gives rise to a contractual right of first refusal. Unless such an offer is shown to be collusive, some deference should be given the seller's desire to take advantage of a favorable proposal. In dealing with that type of transaction, proof of the bona fide nature of the offer in the face of a challenge by the holder of a right of first refusal may, we believe, be less exacting than in the broker commission cases. The existence of a legally binding commitment by a lender should not always be a condition for upholding the bona fides of such a transaction. Rather, an objective determination of the bona fides of the proposed offer should be made based on the decision that a reasonable offeree might make, given the circumstances of the proposed transaction.

At the trial of the present case, evidence was presented that would allow the district court to find, as it did, that Steven Bertram had a legitimate business interest in acquiring this property. Although Steven and his wife lacked the financial means to personally complete the transaction with Eunice Lewis or her successors, they had a year to come up with the money. Steven testified that adjacent property had recently sold for $34,000 an acre. We believe that Corey Development's prompt action in matching the Bertrams' $30,000 per acre offer provides confirmation of the value of the property. Steven indicated that it was his intent to sell off part of the property to obtain a portion of the required payment and that his father had committed to backing him for the balance.

Eunice Lewis testified that Steven Bertram's father, who the record indicates

owned assets in excess of $1,300,000, had assured her that he was committed to bankrolling that portion of the purchase price that Steven was unable to raise through selling off a portion of the subject property. Steven's father testified he had spoken with a banker about the matter and was advised that the bank would be interested in helping him when he presented a specific proposal. Eunice Lewis testified that she had confirmed the willingness of the father's bank to assist in financing the transaction. After considering the evidence, we are convinced that the bona fides of the Bertrams' offer was an issue of fact to be resolved by the district court. That court's finding on the issue has the effect of a jury verdict. Iowa R.App.P. 14(f)(1).

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**