# PACIFIC DEVELOPMENT CO. v. STEWART et ux.

No. 7082.   Decided July 2, 1948.   (195 P. 2d 748.)

See 66 C. J., Vendor and Purchaser, sec. 1305. Notice or demand for possession as condition precedent to vendor's remedy, see note 94 A. L. R. 1239. See, also, 55 Am. Jur. 846.

*Clair M. Aldrich*, of Provo, for appellant.

*I. E. Brockbank*, of Provo, for respondents.

PRATT, Justice.

This action was commenced under Section 104-60-3, U. C. A. 1943, our unlawful detainer statute. Many of the facts were stipulated.

Pacific Development Company, plaintiff and appellant, sold to J. P. Stewart and Corilla Stewart, his wife, a house and lot in Provo, Utah, for the sum of $5900.00. The agreement of sale and purchase was the typical "Uniform Real Estate Contract." Purchaser agreed to pay amounts totaling $100.00 before entering into possession and $55.00 a month each month thereafter, the first payment to be October 1, 1944. The O. P. A. rental ceiling of $50.00 per month was testified to as the reasonable rental value of the property.

From the outset the purchasers did not make their payments in accordance with the contract. Sometimes they paid less than the installment required. They did not pay on the 1st day of the month, but on various days. In November, 1944, payment was not made until the 29th. No payment of any amount was made in December of 1944. During 1945 the purchasers failed to pay any amount in the months of August, November or December. This conduct was continued until October 24, 1946, at which time the purchasers were in arrear $557.50—their last payment was October 14, 1946. From time to time between October,

1944 and October, 1946, the seller demanded that the contract be paid up to date and from time to time the buyers were assured that no forfeiture of their rights was at that time contemplated, but that they should, "do the best you can" or they should catch it up as fast as they could.

Finally on October 24, 1946, the seller mailed the following notice to the purchasers:

"You are hereby notified that the real estate contract by and between the Pacific Development Company as seller and yourselves as purchasers, for the purchase of the house and lot located at 1069 East 5th South, Provo, is now in default on your part by reason of nonpayment of principal and interest in the amount of Five Hundred Fifty Seven Dollars and Fifty Cents ($557.50), and that unless the full amount of said payments and interest in default are paid to the undersigned attorney for the seller within seven days (7) from date the seller elects to declare said contract forfeited in accordance with the terms thereof.

"Dated 24th day of October, 1946."

Immediately after the quoted notice was received the buyers began negotiations with the seller. It was their purpose to get further time in which to bring their payments up to date. The seller objected to any payments except the full amount due on the contract—$557.50. (The amount appears as $562.50 at one place in the testimony.) However, the way was left open for further negotiation up until November 11, 1946, Armistice Day, due to Mr. Stewart's work. On November 12, 1946, a notice to quit in accordance with 104-60-3, U. C. A. 1943, was served upon the buyers giving them five days in which to bring their contract up to date or return possession to the seller. On November 19, 1946, the complaint in this action was filed. The lower court rendered a "Decree" of no cause of action which, of course, denied the plaintiff a writ of possession. Plaintiff has appealed.

The facts related above are undisputed. The plaintiff, as we understand its actions, is here attempting to declare a forfeiture of the defendants' interest in the property not because the defendants have failed to pay any particular

payment at the time it was due but because of their failure to bring the long overdue payments up to date after notice.

One of the provisions of the contract affecting forfeiture is as follows:

"It is understood and agreed that if the seller accepts payments from the buyer on this contract less than according to the terms herein mentioned then by so doing, it will in no way alter the terms of the contract as to forfeiture hereinafter stipulated."

Actual forfeiture was provided for in the following language:

"In the event of a failure to comply with the terms hereof by the Buyer, or upon failure to make any payments when the same shall become due, or within 20 days thereafter, the Seller shall, *at his option*, be released from all obligations in law and equity to convey said property and all payments which have been made theretofore on this contract by the Buyer, shall be forfeited, to the Seller as liquidated damages for the non-performance of the contract and the Buyer agrees that the Seller may, at his option re-enter and take possession of said premises without legal process as in its first and former estate, together with all improvements and additions made by the Buyer thereon, and the said additions and improvements shall remain with the land, and become the property of the Seller, the Buyer becoming at once a tenant at will of the Seller. It is agreed that time is the essence of this agreement." (Italics added.)

The lower court concluded that plaintiff had waived the strict performance of the contract. However, that waiver of the seller's right to insist on prompt payments did not destroy its right to forfeit defendants' interest when they continually failed to perform (see first quotation above). *Christy et ux.* v. *Guild et ux.*, 101 Utah 313, 121 P. 2d 401. Though seller's conduct may have led the buyers to believe that the seller would not insist on prompt payments being made, nothing about its actions should have led them to believe that the seller had permanently waived its right to declare a forfeiture of whatever interest buyers had in the contract. Nothing in the terms of the contract, or the acts of the parties indicate an intention to penalize the seller for leniency. The quoted pro-

visions of the contract contemplated a notice from seller to buyer that seller intended to exercise *its option* of forfeiture. *Leone* v. *Zuniga*, 84 Utah 417, 34 P. 2d 699, 94 A. L. R. 1232. Such notice was not given immediately upon any of the defaults first occurring; but that did not mean that seller was going to continue such conduct forever.

There is no question that the acceptance by the seller of buyers' past due payments and its other conduct toward the buyers leading the latter to believe that strict performance would not be required by the seller, imposes upon the seller the duty of giving to the buyer a reasonable notice before it may insist on strict performance by the buyers. In *Brown* v. *Chowchilla Land Co.*, 59 Cal. App. 164, 210 P. 424, at page 427, the court stated:

"The requirement of notice after the receipt of overdue payments without objection is based upon the equitable consideration that by his conduct the vendor has led the vendee into the belief that the former will continue to waive the *strict* performance of the contract." (Italics ours.)

The lower court concluded that the notice and demand that the plaintiff gave defendants were not reasonable. With that conclusion we cannot agree. The notice (quoted above) informed the defendants that the plaintiff intended, after many lenities, to insist upon its forfeiture rights under the contract at least as to past due payments. That the defendants understood plaintiff's intentions is shown by their actions—they immediately began negotiations for further time in which to bring their payments up to date. Was the time allowed them to accomplish this, a reasonable length of time?

The letter of October 24, 1946, demanded payment within 7 days. Mrs. Stewart in response thereto started negotiations to get further time, requesting until January 1, 1947, to make up past due payments. That request was refused, but further negotiations were anticipated and a consultation with Mr. Stewart was requested by the plaintiff for Novem-

ber 11, 1946. Defendants ignored that request. On November 12, 1946, the notice to quit was served on the defendants. By that notice the defendants were given an additional 5 days in which to pay their past due obligations under the contract. They were unable to do so. As a matter of fact, the defendants were unable to make the payments which were past due at any time prior to the commencement of the action. There is some suggestion in the record that at the time of trial (February 3, 1947) a sale was available, and they could pay up. They had been trying to sell the property presumably to get out of the deal, whole. Although the notice mailed on October 24th gave defendants only 7 days in which to pay there were 23 days (October 25, 1946—November 17, 1946) actually allowed them.

The contract itself provided a 20 day grace period for the payment of installments, before forfeiture might be enforced. (See second quotation from contract.) The time actually allowed after the notice of October 24, 1946, was 23 days. Of course, one must recognize that it is much harder to raise $557.50 than it would be to raise one installment of $55.00. There is room for argument that the mention of 20 days in the contract is not necessarily a good measure of a reasonable time where the sum in default has become quite large. That 20 days, however, is not limited to just an installment payment, but applies to other delinquencies. Be that as it may, the seller in this case has made repeated efforts to induce the buyers to comply with their contract. The first letter is dated as early as April 25, 1945, calling their attention to the date installments were due, with which buyers had not complied. Letters subsequent to that were dated in December 1945, and in January and March of 1946, then followed the ones referred to previously in the body of the opinion.

Repeated warnings without their strict enforcement are, of course, indicative of a willingness to waive that strict performance, but they also have probative value of a cautionary nature. They should warn the buyers the seller cannot continue such conduct indefinitely. Under such circum-

stances the buyers should not let themselves into a position whereby they are forced to assume they can rely on the seller agreeing with them as to what would be a reasonable length of time to make up delinquencies.

Under the circumstances of this case, we believe that the buyers, the defendants, were given a reasonable length of time to clear themselves of default. There is grave doubt that they would have been able to accomplish that goal even with a longer time. They had not paid the equivalent of the rental value of the property for the time they occupied it.

Where the fact surrounding the transaction are undisputed, as they are in this case, this court may determine, as a matter of law, what is a reasonable time. *First National Bank* v. *Pipe & Contractors Supply Co.*, 2 Cir., 273 F. 105 at pages 107, 108. We hold that 23 days was a reasonable time to allow defendants to make up the overdue payments under the circumstances of this case. A writ of possession should have issued in accordance with Section 104-60-3, U. C. A. 1943.

The judgment of the lower court is reversed and the case is remanded for findings and decree in accordance with this opinion. Costs to appellant.

WADE, WOLFE, and LATIMER, JJ., concur.

McDONOUGH, C. J., concurs in the result.