375 P.2d 27

Festus M. FUHRIMAN, Plaintiff and Appellant,

v.

Alfred BISSEGGER and LaRene Bissegger Carlsen, formerly LaRene Bissegger, Defendants and Respondents.

No. 9590.

Supreme Court of Utah.

Oct. 15, 1962.

**380**

Daines & Thomas, Logan, for appellant.

Olson & Calderwood, Logan, for respondents.

WADE, Chief Justice.

Festus M. Fuhriman, appellant herein, brought this suit to recover real property he was selling under a real estate contract entered into in 1946 between him and Alfred Bissegger and his then wife, LaRene Bissegger, now LaRene Bissegger Carlsen, respondents herein, on the ground that their rights in the contract had been forfeited. Respondents counterclaimed for specific performance. After trial of the case before the court, sitting without a jury, the court found the issues in favor of the respondents. and granted the counterclaim, provided that all amounts due under the contract were deposited with the court within 60 days.

The contract provided that if the buyers failed to make payments as they became due, or within 30 days thereafter, the seller at his option could forfeit their rights and retake possession. This type of forfeiture provision not being self-executory, it was incumbent upon Fuhriman to have exercised his option to forfeit their rights by giving Alfred Bissegger, who had succeeded to his divorced wife's interest, sufficient notice of his election to terminate the contract and forfeit his rights therein.[1]

From the record it is clear that almost from the inception respondents failed to make the required payments, and the decisive question to be determined is whether Fuhriman, before the commencement of

1. Leone v. Zuniga, 84 Utah 417, 34 P.2d 699, 94 A.L.R. 1232.

this suit, had given Alfred Bissegger sufficient notice of forfeiture.

It appears that Alfred Bissegger is of sufficiently low intelligence to be classed as feeble-minded and has been a recipient of welfare since 1955. In 1956, Fuhriman told Bissegger that he "figured" the contract "wasn't any good anymore" and suggested that Bissegger could probably get the Welfare Department to pay rent. Mr. Bissegger thereupon informed the welfare worker in charge of his case that he no longer owned the real property in question because the owner had "upped the price" on him and asked that he be allowed $10.00 a month to pay rent. This was the exact amount due for monthly payments provided in the contract. He was given $10.00 a month to pay for rent, but he never paid this to Mr. Fuhriman. Mr. Fuhriman, during the next four years before the commencement of this action, allowed Mr. Bissegger to remain on the property, and on occasions when he would see him would ask him when he would pay something. In the meantime Mr. Fuhriman was making some effort to sell the property to others. In 1960, he commenced this action to evict Mr. Bissegger. When Mr. Bissegger received the summons he consulted his attorney and immediately thereafter a tender was made to Mr. Fuhriman of all moneys due under the contract. This tender was refused.

The court found that Fuhriman's conversations with Bissegger about the delinquent payments and their effect on the contract were of an uncertain nature as to what he might do in the vague future, and were also uncertain as to what he would require Bissegger to do to avoid termination of the contract; and that this behavior led Bissegger to believe that strict performance was not required. The court further found that Bissegger "is an adult of sub-normal intelligence, having the intelligence of a child of approximately 7 years old and although reasonably capable of caring for his physical needs is not of sufficient intelligence to transact business affairs such as the agreement with plaintiff without being furnished with emphatic, clear, definite and detailed instructions." The court then found that Fuhriman had, from the beginning, waived strict or substantial compliance with the agreement, and that he had failed to notify Bissegger that unless payments were made within a reasonable time, there would be a forfeiture of the agreement.

We are of the opinion that the evidence was sufficient to sustain the court's findings that no actual and sufficient notice of intent to forfeit the agreement was given Bissegger before the suit was commenced and therefore the court did not err in granting specific performance on respondents' counterclaim.

Affirmed. Costs to respondents.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.