**B.W. CRUCE, Jr., Appellant,**

v.

**EUREKA LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

No. 05–84–01151–CV.

Court of Appeals of Texas, Dallas.

Aug. 1, 1985.

Rehearing Denied Sept. 4, 1985.

Bill Glaspy, Mesquite, for appellant.

Glynn Purtle, Fillmore, Purtle & Spurgers, Wichita Falls, for appellee.

Before STEPHENS, VANCE and HOWELL, JJ.

STEPHENS, Justice.

B.W. Cruce, Jr., appeals from a judgment denying him recovery for wrongful foreclosure against Eureka Life Insurance Company of America. On appeal, Cruce brings forward four points of error. We reject each point and affirm the trial court's judgment.

In his first three points of error Cruce contends that the trial court erred in rendering judgment for Eureka because: (1) Eureka failed to give notice of its intention to accelerate the note and foreclose its lien under the deed of trust; (2) Eureka failed to demand payment on the full amount of the note before it posted the property for foreclosure; and (3) the property was posted for foreclosure before the indebtedness was due or declared due. We disagree.

■ Cruce misplaces his reliance on *Joy Corp. v. Nob Hill North Properties, Ltd.,* 543 S.W.2d 691 (Tex.Civ.App.—Tyler 1976, no writ), and *Ogden v. Gibraltar Savings Assoc.,* 640 S.W.2d 232 (Tex.1982), for the proposition that when the right to acceleration is optional equity requires the holder to give both notice of his intent to accelerate and notice of acceleration; neither case involved a contractual waiver of such notice. The promissory note in this case provided:

> Each maker, surety and endorser of this note expressly waives all notices, demands for payment, notices of intention ·to accelerate the maturity protest and notice of protest, as to this note and as to each, every and all installments hereof.

The deed of trust contained the following provision:

> That in the event of default in the payment of. any installment, principal or interest of the note hereby secured, in ac-

cordance with the terms thereof, or of a breach of any of the covenants herein contained to be performed by grantors, then and in any of such events beneficiary may elect, grantors hereby expressly waiving presentment and demand for payment, to declare the entire principal indebtedness hereby secured with all interest accrued thereon and all other sums hereby secured immediately due and payable ...

Contractual waivers of notice provisions are valid and enforceable. *See Ogden v. Gibraltar Savings Assoc.*, 640 S.W.2d 232, 233 (Tex.1982); *Chapa v. Herbster*, 653 S.W.2d 594 (Tex.Civ.App.—Tyler 1983, no writ). We conclude that in light of the waivers contained in the note and the deed of trust, neither notice of intent to accelerate nor notice of acceleration was required in this instance. *Slivka v. Swiss Ave. Bank*, 653 S.W.2d 939 (Tex.App.—Dallas 1983, no writ); *Real Estate Exchange Inc. v. Bacci*, 676 S.W.2d 440 (Tex.App.—Houston [1st Dist.] 1984, no writ). Cruce's first three points of error are overruled.

■ In his final point of error, Cruce contends that the trial court erred in rendering judgment for Eureka because the evidence shows that Eureka failed to provide him with the notice of the sale as required by Article 3810.[1] The record contains a carbon copy of a cover letter dated November 6, 1979, from Eureka to the Dallas County's Sheriff's department requesting the posting of three trustee's notices of sale enclosed with the letter. The record also contains an envelope Eureka mailed to Cruce by certified mail, return receipt requested, postmarked November 6, 1979, and a return receipt for that envelope showing delivery to B.W. Cruce, Jr., accepted by Marlene Cruce, on November 8, 1979. James B. Thomas, the trustee under the deed of trust, testified that a "blank copy" of the cover letter to the Dallas County Sheriff's office and a copy of the trustee's notice of sale was sent to Cruce in the above described envelope. Although Thomas testified that he did not personally mail the notice with the cover letter, he stated that doing so was a regular business practice of his company. We conclude that this is sufficient evidence from which the trial court could have found that the proper statutory notice was sent to and received by Cruce. Cruce testified that he received a copy of the cover letter but did not receive a copy of the notice; however, it is the province of the trial court to resolve conflicts in the evidence and to judge the credibility of the witnesses and their testimony. *Johnson v. Buck*, 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Cruce's fourth point of error is overruled.

Affirmed.

HOWELL, J., dissenting.

HOWELL, Justice, dissenting.

I dissent. According to a 1975 holding of the Supreme Court, after a default occurs and before the lender may exercise its optional right of acceleration, the Supreme Court held in 1975 that the lender must make a prior demand for the past due installment and must also provide a prior opportunity to cure the default—both to occur before the lender may proceed to declare the entire balance due. *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex. 1975). The decision was based upon the principles of equity. A contractual waiver, such as the one quoted in the majority opinion, cannot stay the hand of equity.

In 1982, the Supreme Court held that a prior demand for a past due installment is an insufficient predicate for exercise of the optional right of acceleration, unless the demand is in such *clear and unequivocal* language that it will *bring home* to the borrower the fact that failure to comply with the demand *will* result in an acceleration of the entire balance. *Ogden v. Gibraltar Savings Association*, 640 S.W.2d 232 (Tex.1982). As an alternative ground of reversal, if the equitable requirement,

---

1. Act of 1975, ch. 723, S1, 1975 Tex.Gen.Laws, Local & Spec. 2354, *Repealed* by Act of 1983, Ch. 576, § 6, 1983, Tex.Gen.Laws 3729.

found in *Allen,* for a prior demand and a prior opportunity to cure, can be denied by reason of a waiver provision in the note or deed of trust, it necessarily follows that the waiver provision itself must satisfy the *Ogden* test. That is to say, the waiver must be *so clear and unequivocal* as to *bring home* to the borrower that he will be denied the benefit of a prior notice of default and a prior opportunity to cure. The provision at bar fails to meet this test. On either of these grounds, this case must be reversed.

The case at bar involves a long-term mortgage payable in monthly installments. Lender contends that Borrower was often late, but the fact remains that during October, 1979, all scheduled installments, inclusive of the installment falling due on October 1, 1979 and any other charges, had been fully paid. Borrower contends that the November 1 installment was mailed on October 31, but Lender contends that it was not mailed until November 8. The implied findings of the trial court support Lender's contention. Also, Lender is correct in its statement that it had notified Borrower on September 28, 1979 that if payments after October were tendered late, Lender "will accelerate said loan and immediately post a foreclosure", but this notice cannot override the requirements of the law.

Dealings between lender and borrower have long been subject to scrutiny by the courts of equity. The principle that equity abhors a forfeiture was forged out of litigation against the overzealous lender. As compensation for the use, forbearance and detention of his money, a lender is entitled to interest at the contract rate. In dealings between borrower and lender, time is never presumed to be of the essence because the lender continues to receive the contracted compensation until he has been fully repaid.

In the case at hand, Lender has undertaken to recall a long-term investment, willingly made at some time in the past all because, in its view, Borrower was eight days plus mailing time past due upon a single installment. Inasmuch as the contract clearly entitled Lender to interest for the additional days, one cannot help but wonder why this lender, or any similar organization engaged in the business of lending money at interest, would have felt any compulsion to foreclose.

The remedy sought by Lender is a drastic one. For such reason, it has been jealously guarded by the courts in the exercise of equitable jurisdiction. Among other things, equity recognizes that the terms upon which a mortgage is granted are almost exclusively within the control of the lender. While the courts have acknowledged that a lender is free to dictate the terms upon which it will lend its money, the loan documents are carefully scrutinized and strictly construed against the lender, else he overreach the borrower.

At least in the absence of special contractual provisions, the courts of our State have placed three conditions upon a lender who desires to exercise an option to accelerate the contract and demand payment of the entire principal balance forthwith. *Joy Corp. v. Nob Hill North Properties, Ltd.,* 543 S.W.2d 691, 694 (Tex.Civ.App.—Tyler 1976, no writ). First, there must be a *prior demand* that the past-due installment or installments be paid forthwith or acceleration will be had. *Jernigan v. O'Brien,* 303 S.W.2d 515, 517 (Tex.Civ.App. —Austin 1957, no writ). Second, the lender must give the borrower a reasonable *prior opportunity* to cure his default. *Joy,* 543 S.W.2d at 694.[1] Only when conditions one and two have been fulfilled may the lender

---

1. The cases do not disclose the length of time which the lender must afford as a prior opportunity to cure. A lender should not be allowed to suddenly appear at the borrower's door with a written demand for the past due installment in one hand and a notice of acceleration in the other. Considering that mortgages ordinarily are long term obligations and that interest continues to run until payment is made, it would appear that anything less than the close of the succeeding business day following demand would constitute an insufficient prior opportunity to cure.

take the third and final step, which is to declare the entire debt due. *See National Debenture Corp. v. Smith*, 132 S.W.2d 429, 431 (Tex.Civ.App.—Galveston 1939, writ dism'd judgmt cor.). Following the fulfillment of steps one through three, a lender is free to foreclose or take other affirmative action to recover his principal together with other sums that may be due.

Steps one and two are extremely important rights of the borrower although they have not always been clearly distinguished.

> The term "notice of acceleration" is used by the parties to express different concepts. [The Borrower] refers to [prior] notice of intent to accelerate; [the lender] refers to notice that the debt has [already] been accelerated. Although the cases do not always clearly distinguish between the two, *both types of notices are required*. Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default *prior to* harsh consequences of acceleration and foreclosure. Proper notice that the debt has been accelerated, in the absence of a contrary agreement or waiver, [see discussion below] cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable. *See Faulk v. Futch*, 147 Tex. 253, 214 S.W.2d 614 (1948). *Notice that the debt has [already] been accelerated, however, is ineffective unless preceded by proper notice of intent to accelerate.* [citing *Allen*].

*Ogden*, 640 S.W.2d at 233–34 (emphasis added).

Mortgages commonly extend as long as thirty years and call for a payment each month, a total of up to 360 installments. Any of these installments can be delayed or lost in the mail, as here contended by Borrower, or a borrower, being human, can become preoccupied and overlook the due date of an installment. While it is reasonable to expect of a normal borrower that he should be able to promptly pay a past-due installment when the same is demanded, it is unusual for a borrower, when suddenly faced with a demand for payment of the entire principal balance, to be able to respond within twenty-one days or less.[2] Thus, the omission of steps one and two greatly enhances the likelihood that the borrower's equity will be extinguished by foreclosure and sale.

Our majority would apparently hold that steps one, two and three have all been waived by the contract provisions quoted in the opinion. The writer would hold to the contrary. *Allen*, 525 S.W.2d at 865–66 holds that a borrower's right to be furnished a demand for past due installments and the prior opportunity to make those installments good, both occurring before acceleration (being steps one and two) are rights derived from the law of equity. The writer would hold that, inasmuch as these rights are provided by the law of equity rather than the contract, they are not subject to any contractual waiver provision that the lender may have thrust into the contract far in advance of the default in question.

Similar to the case at bar, *Allen* involved a note providing that the lender had the option to accelerate upon default of any installment. Five days after the installment due date, and with no prior demand for the past due installment, the *Allen* lender demanded the entire balance due, and refused to accept a tender of the past-due installment, presented thirteen days late. The Supreme Court held that the acceleration was invalid because it was not preceded by a demand for the past due installment.

> It is undisputed that [the lenders] made no demand for payment of the

---

**2.** Under these lending documents, as interpreted by the majority, no notice that acceleration has already occurred need go to the borrower until a copy of the notice of trustee's sale is mailed pursuant to TEX.PROP.CODE ANN. § 51.002 (Vernon 1984) (formerly TEX.REV.CIV.STAT. ANN. art. 3810). While that notice must go into the mail twenty-one days in advance, the time required for its delivery is of no consequence. *Valley v. Patterson*, 614 S.W.2d 867, 871 (Tex. App.—Corpus Christi 1981, no writ). Foreclosure has even been upheld where the notice was never delivered. *Chapa v. Herbster*, 653 S.W.2d 594 (Tex.App.—Tyler 1983, no writ).

overdue installment prior to exercising their option to accelerate, and it is [the lenders'] position that no demand was necessary [arguing a provision of the Business and Commerce Code stating that demand for payment is unnecessary in a suit against the original maker of a note—contention held inapplicable].

. . . .

. . . "[T]he rule is well established that, 'Where the acceleration clause in a promissory note leaves it optional with the holder whether he shall declare the whole amount due upon failure to pay any installment of principal or interest, such holder cannot *without presentment for payment,* exercise this option to declare the whole amount due. . . ." [emphasis in original]

This rule, peculiar to accelerations, was part of our jurisprudence prior [to the statutes under discussion and until affirmatively displaced by statute], it will remain a part of our jurisprudence.

. . . .

[The lenders] contend that the absence of a requirement in § 3.501 of the Code that demand be made upon the maker *prior* to the exercise of an optional acceleration clause evinces a legislative intent that no demand is required. We disagree.

. . . The equities which gave rise to the origin of the rule are present with as much force today as they were when the rule was spawned. The accelerated maturity of a note, which is initially contemplated to extend over a period of months or years, *is an extremely harsh remedy. Equity demands notice of the exercise of the option to accelerate.* Until the legislature clearly evinces an intent that this rule be abolished, we will continue to apply it and require that the holder of an installment note make a demand to the maker for payment of an overdue installment *prior to exercising an optional acceleration clause.*

**3.** *Allen* was re-affirmed in *Williamson v. Dunlap,* 28 Tex.Sup.Ct.J. 493, 494, 693 S.W.2d 373

*Allen,* 525 S.W.2d at 864–66 (citations omitted) (emphasis added).

The strong language of *Allen* would indicate that *prior* demand and *prior* opportunity to cure are so embedded in the principles of equity that the lender may not impose on the borrower any advance contractual waiver without creating an unconscionable contract. No party may be required to contract away his right of recourse to the courts, nor may he be required to contract away the application of the principles of equity to his case. A provision in the lending documents providing that a borrower had expressly waived the right to seek an injunction against foreclosure would never be recognized. Likewise, the courts would refuse to honor a provision stating that the lender would never be bound by the principles of estoppel. Considering the small burden upon the lender to demand his past-due installment, considering the slight delay involved in giving the borrower an opportunity to cure the default before the lender proceeds, and considering the harshness of the remedy being invoked, *Allen* supports the proposition that principles of equity, which are not subject to advance contractual waiver, place the duties of prior demand and prior opportunity to cure upon the lender.[3]

Recognizing the innate power of a lender to oppress, Texas courts have repeatedly held that equitable principles must be applied to the borrower-lender relation:

> Texas courts historically have not permitted enforcement of acceleration clauses actuated by the leader's fraudulent or inequitable conduct.

*Sonny Arnold, Inc. v. Sentry Savings Association,* 615 S.W.2d 333, 340 (Tex.Civ. App.—Amarillo 1981), *affirmed,* 633 S.W.2d 811 (Tex.1982).

> Loss of the right to accelerate may result from . . . inequitable conduct on the part of the holder. . . .

(1985) (per curiam).

*McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex.Civ.App.—Corpus Christi 1980, no writ) (citations omitted).

> Circumstances which tend to show that a holder has exercised the optional right of acceleration, not for the purpose of protecting his debt ... but for the purpose of coercing the maker ... is [sic] relevant with respect to these equitable considerations.

*Vaughan v. Crown Plumbing & Sewer Service, Inc.*, 523 S.W.2d 72, 76 (Tex.Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).

> A court of equity may relieve against a provision for acceleration where the default of the debtor is the result of accident or mistake, "when it is procured by the fraud or other inequitable conduct of the creditor himself."

*Parker v. Mazur*, 13 S.W.2d 174, 175 (Tex. Civ.App.—San Antonio 1928, writ dism'd) (citations omitted).

> At the outset, we referred ... to the clause as an optional acceleration provision. As such, it is subject to the equitable rules and defenses applicable to other acceleration provisions.

*Sonny Arnold, Inc. v. Sentry Savings Association*, 633 S.W.2d 811, 815 (Tex.1982).

Bear in mind, it is the principles of equity, not the provisions of the contract, which require that a lender observe step one, prior demand for the past-due installment, and step two, prior opportunity to cure, before step three, the ultimate recourse of acceleration, may be imposed. If the courts left it up to the lenders of this world to so provide in their documents, or if the courts waited for borrowers to negotiate those valuable rights into their lending contracts, these equitable rights simply would not exist. They were born not out of contract but out of the courts of equity. May the principles of equity be stayed by a printed form contract imposed by the party with superior bargaining power?

Citing *Ogden*, our majority has held "Contractual waivers of notice provisions are valid and enforceable." That authority contains two relevant statements:

> [I]n the absence of a waiver, the holder ... must ... demand payment ... prior to exercising his right to accelerate. [citing *Allen*.]
>
> ....
>
> ... Proper notice that the debt has been accelerated, in the absence of a contrary agreement or waiver, cuts off the debtor's right to cure his default.... [citing *Faulk*.]

*Ogden*, 640 S.W.2d at 233–34.

At most, the *Ogden* statements are dicta—wholly unnecessary to the case because the decision does not intimate in the least that any claim of waiver was before the court. In the first passage, the *Ogden* court cited *Allen* as its authority. Close reading of the *Allen* case reveals no discussion of waiver whatever. Hence, the first statement in *Ogden* is unsupported dicta.

The second passage is most cryptic. How is it possible to have both "proper notice" and "waiver" in the same instance? If the notice was given, and it was proper, the principles of waiver are irrelevant. Again, examination of *Faulk*, the authority cited, reflects that the *Faulk* court found that a proper demand for the past due installment had been made. No advance contractual waiver provision was involved.

It follows that *Ogden* is scant authority for the majority holding that Lender Eureka's waiver provisions are valid and enforceable.[4]

---

**4.** The majority also cites *Chapa v. Herbster*, 653 S.W.2d 594 (Tex.App.—Tyler 1983, no writ) on the identical point. That borrower had paid all installments on her mortgage, but, as recited in the trustee's deed, the lender gave as his reasons for foreclosure the failure to pay taxes, to keep in good repair and "failure to insure." At the time of foreclosure, the taxes were 18 months in arrears. The borrower had in fact purchased insurance, but the trial court found against her on her claim that she had actually delivered a copy of the policy to the lender, a standard deed of trust requirement. While the lender had written a letter demanding that he be provided with proof of insurance coverage, his letter was silent as to taxes or repairs. More importantly, his letter wholly failed to meet the *Ogden* standard—that a prior notice of default must, in

Neither does *Slivka v. Swiss Avenue Bank*, 653 S.W.2d 939 (Tex.App.—Dallas 1983, no writ) support the majority decision. *Slivka* wholly failed to notice the Supreme Court decisions of *Allen* and *Ogden.* The opinion states that the borrower "cites us to no authority" discussing the construction or validity of waiver provisions in mortgages. The court peremptorily declined to hold the waiver provisions invalid. *Slivka* sheds no light on the proper application of *Allen* and *Ogden.* The latter cases are urged as controlling.[5]

On November 6, 1979, Lender mailed notices of trustees' sale to the sheriff and the implied findings of the trial court support Lender's contention that it simultaneously mailed a copy of this document to Borrower. Lender admits that a remittance of the past-due installment was received before the foreclosure sale actually took place. As in *Allen*, before Lender completed its foreclosure, everything originally contracted for by the note and deed of trust had been paid or tendered. In order to uphold the foreclosure, we must find that Lender acted equitably and reasonably in refusing to accept the November 1 installment, because equity will not allow the optional right of acceleration to be used a tool of oppression. This, we cannot do in the absence of a prior notice of default and a prior opportunity to cure after becoming aware of the default.

Even though the court below found a default by Borrower Cruce of eight or so days in the remittance of the November 1, 1979 payment, this foreclosure should be held void because steps one and two were not followed. No prior demand was made for the past due installment and no prior opportunity to cure was provided before the attempted acceleration. It is inequitable to omit steps one and two. *Allen*, 525 S.W.2d at 863. The insertion of a waiver provision in the lending documents does not transform inequitable conduct into equitable conduct. The inequity persists. *A fortiorari*, the waiver provision may not be recognized.

As an alternative ground to set aside this foreclosure, and on strength of *Ogden*, the writer would hold that lending agreements are to be most stringently construed against the lender, that the waiver provisions quoted by the majority were chosen by Lender, and that, although the same are in all likelihood sufficient to constitute a waiver of step three, notice that acceleration has already occurred; the same are not sufficient to *bring home* to the borrower the fact that he has also waived steps one and two, prior demand and prior opportunity to cure. The note before us provides that Borrower "expressly waives all ... demands for payment...." The language is insufficient to constitute a waiver of step one plus step two plus step three.

"unequivocal" manner "bring home to the mortgagor that failure to cure will result in acceleration." While a copy of the notice of trustee's sale was sent to her by certified mail, the borrower failed to sign for it and did not know until afterwards that a foreclosure had taken place. Between the time of posting and the time of sale, the borrower mailed to the lender her regular monthly payment and he deposited her check and retained her money.

Without taking notice of *Allen* or *Ogden* or any other recent Supreme Court decision, the *Chapa* court ruled that "A foreclosure is reviewed with a presumption ... that provisions ... for waiver ... are valid." *Chapa*, 653 S.W.2d at 600. The court upheld the foreclosure declaring that the lending agreement "contained express provisions as to ... waiver of notice. Accordingly, the rights of the parties are based on contract. We have a case at law in

which equity plays no part." *Chapa*, 653 S.W.2d at 602.

Rather than stand as authority for our majority, *Chapa* is a vivid illustration why the equitable principles enunciated in *Allen* and *Ogden* should be held not subject to any waiver provision happening to appear in a printed form of lending agreement chosen by the lender. Rather than rely on *Chapa*, the majority should have held that the case was wrongly decided.

**5.** The majority's final supporting authority is *Real Estate Exchange, Inc. v. Bacci*, 676 S.W.2d 440 (Tex.App.—Houston [1st Dist.] 1984, no writ). That case primarily relied upon *Ogden* and *Slivka* for its holding that the waiver provisions there under attack were valid and enforceable. Inasmuch as those underlying authorities form an inadequate foundation, *Bacci* forms an inadequate authority for our majority decision.

In particular, there is no waiver of step two, the prior opportunity to cure defaults *after becoming aware thereof.* In *Ogden,* the lender chose the wording to be employed in dealing with the borrower. With only one dissent, the Supreme Court held the demand letter to be bad because it employed the word "may" instead of the word "will." The court pointed out the harshness of the recourse being undertaken by the lender and went on to declare with reference to the prior demand that:

> [S]uch notice must ... *bring home* to the mortgagor that failure to cure will result in acceleration....
>
> ....
>
> We hold that the ... letter [from lender] was insufficient.... The letter gave no *clear and unequivocal notice* that [the lender] would exercise the option [to accelerate].... Since [the lender] did not give proper notice of its intent to accelerate the debt, any attempted acceleration was ineffective.

*Ogden,* 640 S.W.2d at 233–34 (citations omitted) (emphasis added).

Surely if a prior demand for a past due installment must be specific as to the consequences, any waiver of the right to such prior demand must be equally specific.

In our case, Lender Eureka has not included in its lending forms "any clear and unequivocal notice" that Borrower was waiving not only his right to step three, final notice that acceleration had already taken place, but that he was also waiving his right to step one, the right to a prior demand for any past due installments. Certainly, there is nothing in the note or deed of trust sufficient to "bring home" to Borrower Cruce that he was also waiving step two, the right of a prior opportunity to cure any default, after becoming aware thereof.

*Ogden* was expressly followed in *Bodiford v. Parker,* 651 S.W.2d 338 (Tex.App.— Fort Worth 1983, no writ). The deed of trust there provided, in case of default in payment of " 'any part,' " of the debt, that the lender could accelerate " 'without demand or notice of any character.' " The provision was held insufficient to meet the requirements of *Ogden. Bodiford,* 651 S.W.2d at 339.

In a case preceding *Ogden,* the lending documents provided that on default, the lender was authorized to declare " '[T]he indebtedness due and payable *and* without demand upon, or notice to, the Grantors, to foreclose the lien.' " *Purnell v. Follett,* 555 S.W.2d 761, 766 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ). The court held the quoted language insufficient as a waiver of prior notice of default stating that acceleration clauses "should be clear and unequivocal, and where there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid forfeiture." *Purnell,* 555 S.W.2d at 764.

The most alarming feature of the documents upon which lender in our case chose to do business, as our majority has chosen to interpret those papers, is that a borrower can be accelerated *even before he knows that he has defaulted.* The default may result from illness or emergency or simple human oversight.[6] It may result

---

**6.** The inequity which can arise from a holding that the lender may require the borrower to contractually waive the equitable principles of *Allen* is further illustrated by *Valley,* 614 S.W.2d at 867. That borrower "timely made" the first three monthly payments on his mortgage. He was one day late on the fourth payment and the lender accepted it without comment. Two days after the due date of the fifth payment, borrower "suddenly remembered" that the installment was past due and he got a check into the mail late that day, a Saturday (the envelope was not postmarked until Monday). He was six days late inclusive of mailing time, and for this minimal delay, acceleration was imposed. *Valley,* 614 S.W.2d at 870–873.

The lender's motivation was obvious. He was not concerned with loss or impairment of the security. He was attempting to renege upon his agreement to make the loan in question *without interest.* (The opinion does not disclose whether the lender received a "front-end" payment or some other inducement, but there is a strong likelihood that a quid pro quo was exacted for making the loan on these terms).

Rather than order a foreclosure and deprive the borrower of the freely bargained benefit of a non-interest bearing loan, as well as placing

from matters entirely outside the borrower's control such as loss or delay of a check in the mail. Equity should not recognize a waiver of the right of prior demand for the past due installments or the right to a prior opportunity to cure defaults. However, if the waiver of steps one and two is to be countenanced, the spirit of both *Ogden* and *Allen* dictates that the waiver must clearly and unequivocally bring home to the borrower the nature of the rights being waived and the possible consequences of that waiver. None of this has been done and for such reason, the foreclosure before us cannot stand.

I dissent. The case should be reversed and remanded to the trial court for further proceedings.

him in peril of losing all, the court could have granted six days interest on the past due payment. By allowing foreclosure, the court im-

posed a harsh penalty for a small infraction where equity would only have required a judgment that made both parties whole.