Richard M. JOHNSTON, Shauna M. Johnston, Thomas W. McDonald, and Lois S. McDonald, Plaintiffs and Appellants,

v.

Lloyd H. AUSTIN, Virginia Ann Austin, Income Realty and Mortgage, Inc., a Utah corporation, Boyd E. Nelson, Barbara L. Nelson, John Franks, David J. Isbell, and Ruth Ann Isbell, Defendants and Respondents.

No. 19401.

Supreme Court of Utah.

Jan. 4, 1988.

Frank J. Gustin, David W. Overholt, Salt Lake City, for Johnstons.

James T. Dunn, Midvale, for Nelsons.

Kim R. Wilson, Salt Lake City, for Franks.

Thomas N. Crowther, Salt Lake City, for Austins.

STEWART, Associate Chief Justice:

The plaintiffs, Richard and Shauna Johnston and Thomas and Lois McDonald, sellers of land under a uniform real estate contract, appeal a summary dismissal of their complaint seeking to foreclose as a mortgage buyers' interest in land because of buyers' failure to timely pay amounts due under the contract. The complaint was dismissed because the plaintiffs had not given the defendants written notice of default prior to filing the action, although the plaintiffs did give oral notification of default to the original buyers.

On January 15, 1979, the plaintiffs and Lloyd and Virginia Ann Austin entered into a uniform real estate contract for the sale and purchase of an apartment house in North Salt Lake, Utah. Paragraph 16 of the contract gives the sellers the following options if the buyers default:

16. In the event of a failure to comply with the terms hereof by the Buyer, or upon failure of the Buyer to make any payment or payments when the same shall become due, or within 30 days thereafter, the Seller, at his option shall have the following alternative remedies:

A. Seller shall have the right, upon failure of the Buyer to remedy the default within five days after written notice, to be released from all obligations in law and in equity to convey said property, and all payments which have been made theretofore on this contract by the Buyer, shall be forfeited to the Seller as liquidated damages for the non-performance of the contract, and the Buyer agrees that the Seller may at his option re-enter and take possession of said premises without legal processes as in its first and former estate, together with all improvements and additions made by the Buyer thereon, and the said additions and improvements shall remain with the land and become the property of the Seller, the Buyer becoming at once a tenant at will of the Seller; or

. . . .

C. The Seller shall have the right, at his option, and upon written notice to the Buyer, to declare the entire unpaid balance hereunder at once due and payable, and may elect to treat this contract as a note and mortgage, and pass title to the Buyer subject thereto, and proceed immediately to foreclose the same in accordance with the laws of the State of Utah, and have the property sold and the

proceeds applied to the payment of the balance owing, including costs and attorney's fees; and the Seller may have a judgment for any deficiency which may remain.

Since the sale to the Austins, the property has changed hands four times. All the named defendants claim some right, title, or interest in the property.

In 1980, after the Austins were late in making a payment to the plaintiffs, all the defendants entered into an escrow agreement with Escrow Services, Inc., whereby all defendants were to make their required payments to Escrow Services and Escrow Services would disburse the funds to those entitled to them. The plaintiffs were not parties to that agreement, although they accepted payment from Escrow Services for almost two years.

The Austins sent Escrow Services the June, 1982, payment and shortly before June 15, 1982, Escrow Services sent the plaintiffs a check for the payment due on that date. The check, however, was dishonored because of insufficient funds in Escrow Services' account. The plaintiffs immediately notified the Austins orally that the check had been dishonored and demanded payment. In addition, the plaintiffs did not receive the payment due on July 15, 1982.

Besides the oral notice given prior to June 15, the plaintiffs verbally notified the Austins four other times between June 15 and July 19 that the June and July payments had not been received. The plaintiffs told the Austins that they expected payment in full and that they would not accept any payments beyond the thirty-day grace period. No notice of default was given to the other defendants.

On July 19, 1982, more than thirty days after they first orally notified the Austins of the default, the plaintiffs sent the Austins a written notice of acceleration pursuant to paragraph 16C of the contract. The notice declared that the entire indebtedness was due immediately and announced the plaintiffs' intention to foreclose on the contract as a note and mortgage. On August 16, 1982, twenty-eight days after receiving written notice of acceleration, the Austins tendered to the plaintiffs the delinquent June and July payments, but they did not tender the entire indebtedness due as demanded by the July 19 notice. The plaintiffs refused the tender, reiterating that the entire indebtedness was due. Tenders and refusals were repeated several more times until the plaintiffs instituted this action. Since this action began, all payments under the contract have been tendered to the trial court pending resolution of the dispute.

The trial court dismissed the plaintiffs' complaint with prejudice on the ground that verbal notice of default was insufficient as a matter of law. The court ruled that written notice of default should have been given to each party claiming an interest in the property, not just to the plaintiffs' immediate buyers, and that the written notice should have informed the defendants what was necessary to cure the default.

On appeal, the plaintiffs claim that (1) their oral demands on the Austins were sufficient to satisfy the notice requirements of paragraph 16, (2) they were only required to give notice to their immediate buyers, (3) the defendants' payment to the escrow company did not constitute payment to the plaintiffs since the escrow company was not the plaintiffs' agent, and (4) since they had given adequate notice to their immediate buyers, who had not made payment directly to the plaintiffs, they, rather than the defendants, were entitled to summary judgment.

█ The parties agree that in forfeiture cases a seller must give a buyer some type of notice of default and that a seller must give a buyer a reasonable time to cure the default before the seller may exercise his option to declare a forfeiture under a uniform real estate contract. However, virtually all the cases cited by the parties in support of that proposition deal with a forfeiture option under a uniform real estate contract and not with an acceleration option. Forfeiture is a harsh remedy, and a seller must therefore give a buyer notice of default and a reasonable period of time in

which to cure the default before exercising a forfeiture provision. *See First Security Bank v. Maxwell,* 659 P.2d 1078, 1081 (Utah 1983); *Grow v. Marwick Development Co.,* 621 P.2d 1249, 1251–52 (Utah 1980); *Fuhriman v. Bissegger,* 13 Utah 2d 379, 375 P.2d 27 (1962); *Leone v. Zuniga,* 84 Utah 417, 34 P.2d 699, 702–703 (1934). In fact, written notice of default is expressly required by paragraph 16A of the contract. No such clause is found in the acceleration provision, paragraph 16C.

Acceleration provisions are generally less harsh than forfeiture provisions. This Court has recognized a distinction between acceleration and forfeiture in connection with acceleration of mortgage payments and foreclosure of mortgages:

[T]he rule relating to the refusal to apply a forfeiture, where that would produce a result so shocking to the conscience that a court of equity will not enforce it, has no application to the procedure for the foreclosure of a mortgage, which provides the mortgagor with the protections allowed by law in the foreclosure sale and the opportunity to redeem.

*Nagle v. Club Fontainbleu,* 17 Utah 2d 125, 128, 405 P.2d 346, 348 (1965) (footnote omitted).

*Young v. Burchill,* 96 Cal.App. 341, 274 P. 379, 380 (1929), explained why acceleration is not as harsh a remedy as forfeiture and why it should be treated differently:

A provision for such accelerated maturity is not in the nature of a penalty or forfeiture, but simply an agreement as to the time when a debt shall become due and enforceable according to its terms, and is valid.... Such an agreement contains no element of a forfeiture, for there is nothing to forfeit, or any penalty to be imposed. Nor does it fall within the application of any principle of equity for which relief against a forfeiture is sometimes extended.... The situation is entirely different from an agreement of sale wherein, upon failure of payment of an installment, the vendor is attempting to retain payments made and also the property itself, the subject of the sale. While it is the province of a court of

equity to see to it that a party invoking its aid shall have dealt fairly before relief is given, there is nothing objectionable in a contract which provides in case of failure to make punctual payments of installments of principal and interest, [that] the payment of the entire amount due shall be accelerated.

■■ Acceleration of a debt does not contemplate termination of the contract with the result that the seller keeps both the buyer's payments, or some of them, and the land. Rather, acceleration moves up the maturity date of the contract if the seller has "some reasonable justification for doing so." *State Bank of Lehi v. Woolsey,* 565 P.2d 413, 417–18 (Utah 1977). The buyer may still obtain financing from some other source, if necessary, to redeem the property if a foreclosure sale occurs.

Two Utah cases, however, suggest that notice requirements for declaring a valid acceleration are similar to those for declaring a forfeiture under paragraph 16C. In *LaMont v. Evjen,* 29 Utah 2d 266, 268, 508 P.2d 532, 534 (1973), this Court wrote:

Before a seller of land under a uniform real estate contract can exercise any of the options given him because of a failure on the part of the purchaser to pay an installment as promised, he must give the purchaser notice of the default and a reasonable time in which to bring the contract current. The reason for the rule is set forth in 52 Am.Jur., Tender, § 41, as follows:

... This is so because the debt does not become due on the mere default in payment, but by affirmative action by which the creditor makes it known to the debtor that he intends to declare the whole debt due. The creditor is entitled to a reasonable time after default in which to exercise the option, but the option itself does not outlive the default. Such acceleration stipulations should be so construed, if possible and consistent with the language employed, as to give the protection intended thereby to both the debtor and the creditor....

However, a close reading of *LaMont* and of 52 Am.Jur. *Tender* § 41 (1944), upon which *LaMont* relies, reveals that § 41 is quoted out of context. That section does not support the *LaMont* notice requirement and, in fact, can be read as contradicting the notice requirement. The paragraph of § 41 quoted above is immediately preceded by the following:

> Under a contract which provides that any default in the payment of the interest or an instalment [sic] of the principal when due shall give the obligee an option to declare the whole amount due, the general rule is that a tender of payment of the overdue principal or interest before the option to declare the whole debt due has been exercised cuts off the right to exercise the option.

Thus, § 41 supports only the proposition that a tender of delinquent payments before an acceleration option is exercised cuts off that option and cures the default. That, in fact, was one of the alternative bases for the decision in *LaMont*. But § 41 does not state that a notice of default and a reasonable time to cure the default must be given before an acceleration option can be exercised. Section 41 states, therefore, that an acceleration provision is effective when the buyer is made aware that the seller has chosen to utilize it.

In *Hansen v. Christensen*, 545 P.2d 1152 (Utah 1976), a forfeiture case not involving a uniform real estate contract but a contract containing an acceleration option, the Court stated:

> It can be seen that the provisions of the contract, designed to terminate contractual relations, are not self-executing. They require some affirmative act on the part of the seller. Therefore, the contractual relations between seller and buyer are in existence until such time as the seller chooses to notify the defaulting buyer of its election to proceed under one, or all, of its options. In so doing, seller must give the defaulting buyer a

reasonable time within which to cure the default. Without this notice the defaulting buyer would not know what to do. He would not have certain knowledge his tenancy was at an end. He could assume that the seller may have waived default, or would elect to enforce the contract rather than forfeit it; or he could assume he would be permitted to perform.

*Id.* at 1154 (footnote omitted). Although this paragraph could be read to apply the notice and time-to-cure requirements to the acceleration option of a uniform real estate contract, the topic sentence of the paragraph speaks only of those provisions designed to *terminate* the contract. Acceleration provisions do not terminate contracts; they merely set the time for performance. Furthermore, the authority cited in *Hansen, Leone v. Zuniga*, 84 Utah 417, 34 P.2d 699 (1935), is a forfeiture case, and the contract in *Leone* did not contain an acceleration provision.

We find it necessary, therefore, to reexamine the law concerning acceleration provisions in uniform real estate contracts. We begin our analysis by examining our case law concerning acceleration provisions in similar types of contracts.

 This Court has held that "acceleration clauses in negotiable instruments and other contracts will be enforced in accordance with the agreement of the parties." *KIXX, Inc. v. Stallion Music, Inc.*, 610 P.2d 1385, 1388 (Utah 1980).[1] Where acceleration is optional, some affirmative act on the part of the seller is required to exercise the option, and until the seller has exercised his option, the buyer may cure the default by tendering payment of the delinquent amount to the seller. *Id.* *See also Romero v. Schmidt*, 15 Utah 2d 300, 392 P.2d 37 (1964) (discussing acceleration provision of uniform real estate contract). *KIXX* also held that "notice of a [seller's] intent to exercise his option is not neces-

---

**1.** *KIXX* involved the sale and purchase of a radio station and FCC broadcasting license. Although the sale was not made pursuant to a uniform real estate contract, it was made pursuant to a written contract and promissory note calling for installment payments. Therefore, the legal principles stated therein carry some weight in the uniform real estate contract context.

sary, unless the contract of the parties so requires, and exercise of the option within the terms of the contract cuts off [buyer's] right to remedy the default." 610 P.2d at 1388.

■ This Court has also held that there is no requirement that notice of default and time to cure be given a mortgagor before a mortgagee may exercise an acceleration option in a mortgage. In fact, absent some contractual provision to the contrary, a mortgagee may declare that it has chosen to accelerate the debt by simply bringing an action for the collection of the entire debt immediately upon default. *Commercial Security Bank v. Corporation Nine*, 600 P.2d 1000 (Utah 1979); *Thomas v. Foulger*, 71 Utah 274, 264 P. 975 (1928). *See also American Savings & Loan Ass'n v. Blomquist*, 21 Utah 2d 289, 445 P.2d 1 (1968). Only where enforcement of an acceleration provision would be unconscionable, e.g., where the mortgagee has no "reasonable justification" for accelerating, should a court intervene and alter the terms of the contract. *State Bank of Lehi*, 565 P.2d at 418 ("acceleration is a harsh remedy which should be allowed only if there be some reasonable justification for doing so").

■ Furthermore, with respect to uniform real estate contracts specifically, this Court has stated:

> [S]ellers and buyers should be able to contract on their own terms without the indulgence of paternalism by the courts in the alleviation of one side or another from the effects of a poor bargain. They should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship on one side.

*Park Valley Corp. v. Bagley*, 635 P.2d 65, 67 (Utah 1981) (citation omitted). *See also Carlson v. Hamilton*, 8 Utah 2d 272, 332 P.2d 989 (1958). As in the mortgage context, courts should intervene and alter the contractual provisions only when the enforcement of the terms of the uniform real estate contract would be unconscionable. *Park Valley*, 635 P.2d at 67; *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952).

Consistent with our case law concerning acceleration provisions in contracts similar to uniform real estate contracts, almost all courts hold that notice of default is not necessary under a land sale contract unless specifically required by the contract and that the seller may foreclose immediately as a matter of right after default by the buyer. *E.g., Tourney v. Collins*, 48 Cal. App.2d 381, 119 P.2d 954, 958 (1941); *Minchella v. Fredericks*, 138 Mich.App. 462, 360 N.W.2d 896, 900 (1984); *Jesz v. Giegle*, 319 N.W.2d 481, 483 (N.D.1982); *Lorenzen v. Jackson*, 284 Or. 251, 586 P.2d 341 (1978); Annotation, *What is Essential to Exercise Of Option to Accelerate Maturity of Bill or Note*, 5 A.L.R.2d 968, 981 (1949) and cases cited therein. *Cf. Ogden v. Gibraltar Savings Ass'n*, 640 S.W.2d 232 (Tex.1982). Other courts have also held that absent a contract provision to the contrary, the initiation of a foreclosure action is sufficient to declare the seller's intention that the entire unpaid balance be due. *Zerkel v. Lindsey*, 270 Or. 517, 528 P.2d 1041 (1974); *Cruce v. Eureka Life Insurance Co.*, 696 S.W.2d 656 (Tex.Ct.Civ. App.1985). *See also* 5 A.L.R.2d, *supra*, at 981, and cases cited therein.

■ Our law concerning acceleration provisions in uniform real estate contracts should be consistent with the law concerning acceleration provisions in similar types of contracts. Therefore, we hold that acceleration provisions in uniform real estate contracts should be interpreted according to the terms of the contract itself. Only if enforcement would be unconscionable under the circumstances, i.e., the seller does not have a reasonable justification for exercising the acceleration provision, should a court of equity intervene to alter the contractual provisions. Accordingly, notice of default and a reasonable time to cure the default are not required unless the parties agree to such terms or absence of such notice and time to cure would be unconscionable. To the extent that *LaMont* and *Hansen* may be inconsistent with this ruling, they are expressly disavowed.

 Therefore, in this case, we look only to the provisions of the contract to determine what is required to accelerate the payments and to treat the contract as a note and mortgage. Paragraph 16C reads in relevant part:

The Seller shall have the right, at his option, and upon written notice to the Buyer, to declare the entire unpaid balance hereunder at once due and payable, and may elect to treat this contract as a note and mortgage, and pass title to the Buyer subject thereto, and proceed immediately to foreclose the same....

The clear language of this provision requires only written notice to the Austins that the entire unpaid balance is "at once due and payable." No requirement that a reasonable period of time be allowed for the Austins to cure the default is contained in paragraph 16C, and we cannot therefore imply such a provision. The terms of the contract should be enforced unless there is a valid defense to enforcement.

The plaintiffs sent written notice of acceleration nearly two months before instituting the foreclosure proceedings. There is nothing in the facts before us on this appeal that would require us to conclude that enforcement of the contract is unconscionable as a matter of law. However, the trial court is free to make such a determination if warranted by additional evidence presented at the trial on the merits. Accordingly, we reverse the trial court's award of summary judgment and remand for further proceedings.

 On remand, the plaintiffs' other arguments may again arise. The trial court concluded that, as a matter of law, written notice of default should have been sent to each of the parties claiming an interest in the property. However, because we conclude that no written notice of default is required in order to accelerate a debt on a uniform real estate contract, no written notice is required for either the Austins or the subpurchasers. Further-

more, the defendant subpurchasers concede that although they are in privity of estate with the plaintiffs, they were not in privity of contract with them. Accordingly, the plaintiffs have no legal duty under the contract to provide the subpurchasers with written notice of acceleration as required by paragraph 16C of the contract.[2] *See Campbell v. Kerr*, 95 N.M. 73, 618 P.2d 1237, 1243 (1980). *See also Ellis v. Butterfield*, 98 Idaho 644, 646, 649, 570 P.2d 1334, 1336, 1339 (1977). In any event, the subpurchasers received notice of acceleration as to any equitable interests they may have possessed in the land when the instant action commenced and they were served with the complaint.

 The plaintiffs also argue that the Austins' tender of the June payment to Escrow Services did not amount to performance of the contract since the plaintiffs were not parties to the agreement with Escrow Services. We agree. To be effective, a tender of payments under a contract must be made to the person entitled to the payment or to his or her authorized representative. *Texaco, Inc. v. Creel*, 57 N.C.App. 611, 619, 292 S.E.2d 130, 134 (1982); 74 Am.Jur.2d *Tender* § 15, at 554 (1974); 55 Am.Jur.2d *Mortgages* § 434, at 461 (1971). *See also Maryland Cas. Co. v. Hanson Dredging, Inc.*, 393 So.2d 595 (Fla. Ct.App.1981); *Keller v. Martin*, 153 Mont. 9, 452 P.2d 422 (1969). It is undisputed that Escrow Services was not the plaintiffs' authorized representative for receiving payments under the contract. Accordingly, tender to Escrow Services did not amount to performance of the contract. Nevertheless, the trial court is not precluded from looking at the agreement with Escrow Services or considering any other issues the parties may raise at trial relative to the determination of whether a reasonable justification for acceleration existed. We express no view as to the outcome of such an inquiry.

---

2. However, had the subpurchasers been assignees of the plaintiffs, they would have been entitled to the legal rights, benefits, and privileges accorded the Austins under the contract, including the right to written notice under paragraph 16C. *Hadlock v. Showcase Real Estate, Inc.*, 680 P.2d 395, 397 (Utah 1984).

Reversed and remanded for further proceedings.

HALL, C.J., and DURHAM, and ZIMMERMAN, JJ., concur.

HOWE, Justice (concurring):

I concur. I write to point out that the defendants other than the Austins are subpurchasers of the property. The Austins have never assigned their interest in the contract or property to any of the other defendants. Therefore, the written acceleration notice required by paragraph 16C of the contract needed to be given only to the Austins and not to the subpurchasers. *Cf. Hadlock v. Showcase Real Estate, Inc.*, 680 P.2d 395 (Utah 1984).

I am also of the opinion that if, as asserted by defendants, plaintiffs have habitually accepted late payments on the contract, this fact could be raised to support an argument that it would be unconscionable to now allow plaintiffs to accelerate the contract without first giving Austins adequate notice that strict performance would be required in the future. *See Pacific Development Co. v. Stewart*, 113 Utah 403, 195 P.2d 748 (1948).